(18 App. Div. 101.)

### PEARCE v. STEPHENS et al.

(Supreme Court, Appellate Division, Second Department.    May 18, 1897.)

1. OFFICERS—CREATION OF OFFICE—CONSTITUTIONAL LAW.
    Laws 1897, c. 108, constituting the sheriff and other county officers of Richmond county a board to appoint police commissioners for the county, does not violate the provision of Const. 1895, art. 10, § 1, that "sheriffs shall hold no other office," but it only imposes on him an additional duty under section 2 of said article, which provides that "county officers whose election or appointment is not provided for by this constitution shall be elected by the electors * * * or appointed by the county authorities, as the legislature shall direct."
2. SHERIFFS—POWERS AND DUTIES—IMPOSITION BY STATUTE.
    Sheriffs may be required to act as members of boards of appointment, under Const. 1895, art. 10, § 2, which authorizes the legislature to direct the appointment by the "county authorities" of county officers whose election or appointment is not provided for by the constitution.
3. SAME—INCONSISTENT DUTIES.
    The duty of acting as member of a board to appoint police commissioners of a county, imposed on the sheriff of such county (Laws 1897, c. 108), is not inconsistent with the duties which inhere to the office of sheriff, one of which is to act as a conservator of the peace.
4. CONSTITUTIONAL LAW—EXCLUSION FROM OFFICE—POLITICAL OPINION.
    Laws 1897, c. 108, which provides that the two police commissioners of Richmond county shall not belong to the same "political party, nor be of the same political opinion on state and national politics," does not exclude any one from the right to hold office by reason of his opinion or party affiliation.
5. SAME—PARTISAN LEGISLATION.
    An objection that a statute is partisan cannot be sustained where no specific constitutional objection is pointed out.

Appeal from special term, Kings county.

Action by Joseph B. Pearce, Jr., against Stephen D. Stephens, as county judge, and others.    From an order continuing pendente lite an injunction restraining the appointment of police commissioners, under Laws 1897, c. 108, defendants appeal.    Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Geo. M. Pinney, Jr., for appellants.

George W. Wingate and Thomas W. Fitzgerald, for respondent.

HATCH, J.    Laws 1897, c. 108, is an act to provide for the reorganization, regulation, and maintenance of a police department for the county of Richmond.    By virtue of its provisions, so far as material to the present controversy, the county of Richmond is continued a separate police district.    The existing board of police commissioners cease, and their office determines, upon the appointment and qualification of the commissioners provided for by the

act. The management and control of the police department is vested in two commissioners, to be known as the "Police Commissioners of Richmond County." They are deemed county officers, and, when appointed, shall not belong to the same "political party, nor be of the same political opinion on state and national politics." The power of appointment is vested in the county judge, sheriff, and district attorney of the county, who are constituted a board of appointment, a majority being authorized to act in making an original appointment or in filling a vacancy. This board is made permanent and specific. Provision is made respecting the evidencing of appointments, the filling of vacancies, and the appointment of successors to the police commissioners.

The action seeks to restrain the defendants from performing the duties imposed by the act, upon the ground that its provisions are in violation of the constitution of the state. The specific provision of the constitution claimed to be violated is section 1 of article 10, in that the act constitutes the sheriff of Richmond county a member of a board of appointment, vested with power to appoint a police commissioner, and thereby creates an additional office, within the meaning of that section, and in violation of the provision that "sheriffs shall hold no other office." The act is further assailed as being in violation of section 10 of article 2 of the constitution, in that the commissioners, when appointed, shall not belong to the same political party or be of the same political opinion on state and national politics. This, it is claimed, is an unauthorized limitation upon the power of the local authorities to appoint. It is also claimed that the act, in purpose and substance, forces upon the community officers that it would not elect, and is therefore unconstitutional. These several claims will be considered in the order of their statement.

It may be conceded that the comprehensive signification which attaches to the word "office" is broad enough, in some of its senses, to embrace the board of appointment created by this act, and to designate those persons constituting its membership as officers. Some authority exists to the effect that they are public officers, within the plain meaning of the term. State v. Stanley, 66 N. C. 59. We are not, however, able to find that the courts in this state have gone this length. But we assume, for the purpose of this decision, that this act in terms confers upon the sheriff a public office.

This brings us, by the logical requirements of the situation, to an inquiry of its sense and meaning as used in the constitutional requirement under consideration, and its proper construction in connection with the other provisions of the constitution. By section 1, art. 10, of the constitution, the sheriff is to be elected by the electors of his county, and he becomes a county officer. The language of the prohibition contained in the section is, "Sheriffs shall hold no other office." Section 2 of this provision of the constitution provides:

"All county officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties or

appointed by the boards of supervisors, or other county authorities, as the legislature shall direct."

By the act, the commissioners to be appointed are deemed to be county officers. No provision is made for their election or appointment in the constitution. It became incumbent, therefore, for the legislature to direct how and by what authority they should be placed in office. The act designates county authorities for that purpose, as authorized by the constitution. It is clear that the sheriff is a county authority, within the meaning of that section. If the contention of the respondent is to be upheld, then the sheriff, although a county authority, is to be excluded from that part of the county authority which the legislature may select to make the appointment. This cannot be done by any language which has been used in terms of exclusion, for there is none. It can only arise out of the prohibition contained in section 1, which prohibits the holding of any other office. Taking the language of both sections, being in pari materia, and therefore to be construed together, it would seem to answer all reasonable requirement to say that the prohibition imposed was not intended to embrace those duties and obligations which might be imposed upon the sheriff, as a county authority, by the legislature; but that the limitation was subject to the provisions of the constitution, under which an additional duty might be imposed upon the sheriff as a part of the county authority. The duty devolved upon the sheriff by the second section of article 10 of the constitution is a duty and obligation which attaches to the office, which he holds as a county official, in common with all other county officers. It arises by reason of his relation to the county, and, as such county official, the constitution has empowered the legislature to impose upon him the precise obligation which the act has imposed. It is not an office which is created in connection with his duties as sheriff, or in connection with the functions required of such officer. It rests solely upon the fact that, by the constitution, he becomes, by virtue of his office, a county authority; and, upon such authority, the constitution imposes a burden which is distinct and independent of the particular duties which attach to the office of sheriff. As the constitution has selected the county authority, without making any exception in the personnel which goes to make it up, upon which the obligation is imposed, we think that it must be construed as adding thereto a new duty and function by reason of his position in the body where the duty may be made to rest. And, although the sheriff may hold no other office, he may and is, by constitutional requirement, obligated to perform such duties as may be constitutionally imposed, in his capacity as a county officer, which are as clearly imposed and enjoined as is the obligation to perform the duties of sheriff. There is no such inconsistency in the duties which inhere to the office of sheriff, and those which are imposed or may be upon the county authorities by virtue of this provision of the constitution, which calls for the rejection of the exercise of this authority by a sheriff upon that account. It is the duty of a sheriff to act as a conservator of the peace within his county, and

he may appoint deputies as may be necessary to encompass that end. He is bound to suppress an affray, and arrest a breaker of the peace, if the offense happen within his view. His duties are, in a large measure, in kind the same as are imposed upon police officers, and he necessarily exercises police powers. Instead of the duties devolved upon him by the common law being in conflict with the act which he is called upon to perform in his capacity as a county authority, they are in fact quite similar and in close alliance. The appointment of a commissioner of police who is in turn to control the police power of the county, and thus preserve the security of persons and property and the maintenance of order, scarcely differs in character from the appointment of a deputy sheriff for that purpose. For these reasons, we are led to the conclusion that the act is not in conflict with the constitution in this respect.

The case of Rogers v. Common Council of Buffalo, 123 N. Y. 173, 25 N. E. 274, seems to be conclusive in answer to the second point raised by the respondent. The language of the act there under consideration is like the language of the present act, except that there are added thereto the words "nor be of the same political opinion on state and national politics." But these words have no more effect, as an exclusion of any citizen from eligibility to appointment, than has the language that they shall not belong to the same political party. It still leaves the appointee to be selected from any political party, and from any body of citizens. The act alone interposes to prevent the appointment of more than one from such party, holding the same opinion, and this was precisely upheld as valid in the Rogers Case. It is not made to appear that any more difficulty attends upon the selection based upon political affiliation and opinion than upon affiliation alone. No one is excluded by reason of his opinion or party affiliation, and difference of opinion is quite as readily discovered as is difference in party affiliation. We do not find anything in Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. 15, which questions in the slightest degree the authority of the Rogers Case. Each of the judges who wrote both prevailing and dissenting opinions upheld it as an authority, and we think it applicable to the present statute, relating to local offices under the existing constitution. As it has not been in any degree discredited, it must now be regarded as conclusive upon the present question.

The last ground of objection, that the bill is partisan, points out no specific constitutional objection, and of it we may say that it presents a question with which the judicial function is not concerned. The power rests with the legislature to pass such laws as it, in its wisdom, deems proper for the best interests of the state, or any political division thereof. With the exercise of that power we can have nothing to do, beyond inquiring whether or not it be in conflict with the provisions of our own or the federal constitution. Const. art. 3, § 1. Every act of the legislature must be upheld by the courts, unless it be in substantial conflict with some provision of the constitution. People v. Briggs, 50 N. Y. 553; People v. Rice, 135 N. Y. 473, 31 N. E. 921. Applying this rule to the

act in question, we are unable to find that it is repugnant to any constitutional provision.

The order appealed from should therefore be reversed, and the injunction vacated. All concur.