In the Matter of the Application of MAX S. GRIFEN-
HAGEN, Appellant, for a Writ of Mandamus against
SAMUEL H. ORDWAY et al., Composing the Civil Serv-
ice Commission of the State of New York, Respondents.

Sheriffs — res adjudicata — weight and effect of former decisions
relating to office and functions of sheriff — when duties of a jury
clerk are duties performed as agent of sheriff, and not as agent
of a county.

1. This court should not undermine the law by reversing a
decision unless it has been demonstrated to be erroneous through
failure to consider a statute, prior decision, material fact or other
substantial feature, or unless through changed conditions it has
become obviously harmful and detrimental to society — a condition
the legislature will very rarely suffer to exist. A contrary course
would cause infinite uncertainty, if not mischief, in the adminis-
tration of the law.

2. The duties of a jury clerk are the duties of the sheriff and relate
to the functions of the sheriff in civil matters. They are duties
performed by the clerk as the agent of the sheriff and not as the
agent of a county. The position is not in the competitive class of
the civil service and an appointment thereto by the sheriff without
regard to the civil service commission and their powers is not in
violation of the statutes and of the rules and regulations of that
board. (*Matter of Flaherty* v. *Milliken*, 193 N. Y. 564, approved and
followed.)

*Matter of Grifenhagen* v. *Ordway*, 172 App. Div. ——, reversed.

(Argued April 14, 1916; decided July 11, 1916.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
January 28, 1916, which affirmed an order of Special
Term denying a motion for a writ of mandamus to com-
pel the state civil service commission to certify the pay-
roll of the sheriff of the county of New York for the
month of October, 1915, as to the compensation of Lester
M. Friedman, a jury clerk.

The facts, so far as material, are stated in the opinion.

*George W. Olvany* and *Abraham S. Gilbert* for appellant. All appointees of the sheriff, any part of whose duties relate to the discharge of the sheriff's functions in civil matters, are personal agents of the sheriff, and are not in the service of the public, and consequently are without the civil service regulations. (Const. N. Y. art. 10, § 1; L. 1840, ch. 523, § 20; *Colvin* v. *Holbrook*, 2 N. Y. 126; *Matter of Flaherty* v. *Milliken*, 193 N. Y. 564; *Mayforth* v. *Foley*, 134 App. Div. 949; 198 N. Y. 508.) The position of jury clerk is a confidential one, in view of the liability of the sheriff personally for the acts of the incumbent of the position. (*People ex rel. Sweet* v. *Lyman*, 157 N. Y. 368; *Blust* v. *Collier*, 62 App. Div. 478; *People* v. *Palmer*, 152 N. Y. 217; *Crittenden* v. *Wurster*, 152 N. Y. 352; *People* v. *Gardner*, 157 N. Y. 520.)

*Egburt E. Woodbury, Attorney-General* (*Alfred L. Becker* and *James S. Y. Ivins*), for respondents. The position of jury clerk in the office of the sheriff of New York county is, as a matter of law, within the classified civil service of the county and city of New York. The jury clerk is not a deputy or *alter ego* of the sheriff. He acts only under supervision. He may handle and prepare a civil process, but he is not concerned with the execution thereof. The sheriff may delegate only to a deputy, general or special, the execution of civil process. (*Gibson* v. *Nat. Park Bank*, 98 N. Y. 87; *Edmunds* v. *Barton*, 31 N. Y. 496; *People ex rel. McEwan* v. *Keeler*, 29 Hun, 175; *People ex rel. Andrus* v. *Town of Champlain*, 16 Misc. Rep. 92; *People ex rel. Church* v. *Hopkins*, 55 N. Y. 74; County Law, § 182; *Sheldon* v. *Van Buskirk*, 2 N. Y. 473; *Harland* v. *Howard*, 57 Hun, 113; *People ex rel. Hoefle* v. *Cahill*, 188 N. Y. 489; *People ex rel.*

*Corkill* v. *McAdoo*, 98 App. Div. 312; *Matter of Chris-tey* v. *Cochrane*, 211 N. Y. 333; *Matter of Hammond* v. *Ricker*, 66 Misc. Rep. 526; 140 App. Div. 19; 200 N. Y. 527.) The sheriff cannot, by imposing duties connected with the execution of civil process upon a subordinate clerk, exempt him from the operation of the Civil Service Law. (*People ex rel. Hoefle* v. *Cahill*, 188 N. Y. 489; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Simons* v. *McGuire*, 204 N. Y. 253; *People ex rel. O'Brien* v. *Cruger*, 12 App. Div. 536; *People ex rel. McDonald* v. *Clausen*, 50 App. Div. 286; *People ex rel. Robesch* v. *President*, 190 N. Y. 497; *People ex rel. Taylor* v. *Welde*, 61 App. Div. 580; *Chittenden* v. *Wurster*, 152 N. Y. 360; 14 App. Div. 497.)

*Egburt E. Woodbury, Attorney-General* (*Albert De Roode* of counsel), for Civil Service Reform Association. The requirement of the constitutional provision (Art. 5, § 9) for competitive examination where practicable controls the method of selection of all persons in the civil service in spite of any inherent or historic relation between the appointing officer and the appointee. (*People ex rel. Killeen* v. *Angle*, 109 N. Y. 564; *People ex rel. McClelland* v. *Roberts*, 148 N. Y. 360.) The Civil Service Law contains an express provision to cover the claim of personal responsibility on the part of the appointing officer. (Cons. Laws, ch. 7, § 14.)

COLLIN, J. The ultimate question presented here is, was Lester M. Friedman legally and validly appointed by the appellant Grifenhagen, while sheriff of New York county, a jury clerk in his office. The appointment was made October 11, 1915, directly by the appellant and without regard of the civil service commissioners and their powers. The respondents assert and argue that the appointment was illegal, because the position of jury clerk belonged in the competitive class of the civil serv-

ice and the appointment was in violation of the statutes and of the rules and regulations of the respondents. For such reason they have refused to certify the payroll of the appellant as to the compensation of Friedman.

In *Matter of Flaherty* v. *Milliken* (193 N. Y. 564), the legality of the appointments by the sheriff of Kings county of assistant deputy sheriffs, jail keepers, van drivers and matrons in his office was denied by the civil service commission and was determined by us. We held those appointments, except those of the van drivers, legal, and considered and expressed through the opinion written by Chief Judge CULLEN, concurred in by his associates, the nature of the office of sheriff and the relations existing between the sheriff and those appointees. A claim of the respondents here is that the duties of Friedman as jury clerk were not sufficient to bring the appointment within the effect of our decision.

The principle from which the decision in the *Flaherty* case sprang was that the appointees were, in so far as they participated in the duties of the sheriff relating to civil functions, in the service of the sheriff personally; that the relation between him and those who served him in such duties was that of master and servant or principal and agent. Chief Judge CULLEN stated it thus: "The question which lies at the threshold of this controversy is whether the deputies, assistant deputies and other appointees of the sheriff are, as far as they discharge the duties of the sheriff relating to civil process, in the service of the county or in the service of the sheriff personally, though they are undoubtedly public officers and liable to criminal punishment as such for official misconduct. If they are not in the service of the county but in that of the sheriff, the positions held by them fall neither within the constitutional provision, nor within the purview of the statute." (p. 567.) This decision was rendered in December, 1908. The constitutional provision referred to (Section 9 of article 5) remains without change and no relevant

change in the statute referred to (Civil Service Law [Laws of 1899, ch. 370, §§ 6 and 2; Laws of 1909, ch. 15; Cons. Laws, ch. 7], §§ 6 and 3) has been set forth by counsel or discovered by us. In demonstrating the existence of the principle upon which the decision is based, Chief Judge CULLEN wrote of the nature of the office or position of sheriff in its ancient origination and as recognized by the Constitution and statutes of the state. It, through the centuries, has had fundamental characteristics and a recognized singularity. The history of the sheriffdom is one of the most important departments of the constitutional history of England. The ancient powers of the sheriff within the county which constituted his domain were broad and great. He was little less than a provincial viceroy. His functions were miscellaneous. All the affairs of the county, fiscal, judicial, executive and military, were under his control. He was the royal steward or bailiff — the king's fiscal manager — and the protector of the king's interests. The royal powers and interests in the county were, in a sense sufficiently accurate, let or farmed to him for considerations, at his own risk as to profits or losses for his services. He took the county at a rent and, naturally, tried to make out of it as much as was possible. A decline and fall in his powers continued through centuries. He became hated as the oppressor of the county and royalty was compelled to constrict his powers and curb his conduct. New institutions grew up around him, encroaching upon his functions, and overshadowed him. Legislative enactments have from time to time shorn him of prerogatives. The elemental nature or characteristics of the office have not, however, been extinguished by those forces nor by the societal developments through the successive ages. From the remote period the responsibilities and duties of the sheriffdom, as they from time to time existed, have rested upon the sheriff personally. The acts of his agents or servants resulting from the exercise of his functions or the fulfill-

ment of those duties were his acts. The mistakes in the exercise or fulfillment and the failures or omissions to exercise or fulfill were his. The profits arising from and the charges and expenses connected with the office were his. As Chief Judge CULLEN said, "the civil business of the sheriff was plainly and exclusively his own." Those whom he retained, employed or appointed as subordinates, agents or servants were in his personal service and not the service of the county, and in their selection and in creating the relation he was free and unhampered. Their acts of misfeasance or malfeasance, their derelictions from carelessness, ignorance or ill-judgment were his, and for the effects of those acts he was liable. As to the effect of the statutes of this state affecting the office we here repeat the language of Chief Judge CULLEN: "Now there are cases where, by statute, an officer is made responsible for the default of his subordinates, and it may be that in such cases the subordinate is in the service of the public despite of such liability on the part of his superior. But the cases cited show that the relation between a sheriff and his appointees is much more intimate. It is not merely that the sheriff is liable for the default of his appointee, but that the appointee for such default is liable to the sheriff and to no one else, and the ground on which these decisions proceeds shows exactly the nature of the relations between the two, that the appointee is regarded merely as the agent for the sheriff, and that the same rule applies as between principal and agent in ordinary private business. Nor has the statute which makes the office of sheriff a salaried one changed the nature of the relation between the sheriff and his appointees. It is true that what may be called the profits of the business, that is, the receipts, over and above the expenses and salaries, are required to be paid into the county, but that does not make the county the principal in the business. Such a result is expressly forbidden by section 1 of article 10 of the Constitution, which provides that ' the county shall

never be made responsible for the acts of the sheriff,' a provision which has existed since the Constitution of 1822.   Doubtless the statutory provision making the office salaried and providing that the surplus shall be paid to the county is valid, but that does not, and cannot, make the county liable for losses in the business." (p. 568.)

The principles which controlled our decision in the *Flaherty* case are applicable to the present facts and must control our present decision.   The duties of Friedman as the jury clerk are the duties of the sheriff and relate to the functions of the sheriff in civil matters.   While they are not the same as those performed by the appointees in the *Flaherty* case, and are or may be less important, they are the duties of the sheriff, performed by Friedman as the agent of the sheriff and not as the agent of the county of New York.

The counsel for the respondents and for the intervenors urge earnestly, even vehemently, that we should reverse the *Flaherty* case, in compliance with the demands of public opinion as indicated to exist in the Civil Service Law and the regulations and reports of the civil service commission.   The demands of public opinion are voiced more accurately by legislative enactments than by the assertions and arguments of counsel or the reports of the commission.   The *Flaherty* case, as we have stated, was decided in 1908.   In it we said: " It may also be that the legislature might by an appropriate statute change the nature of the relation between the sheriff and his appointees so that the latter would no longer be strictly agents of the former but independent public officers liable for misconduct directly to any one injured by the same.   Assuming, however, such power in the legislature, no such intent should be ascribed to a statute except where such intent is very plainly indicated.   It would throw the whole law upon the subject of the liability of a sheriff and his deputies or his appointees as it has existed for centuries into confusion, and make one rule applicable in one

county and another rule in another." (p. 569.) The integrity and operation of the decision in the *Flaherty* case have not been affected by any statute. The legislature has not deemed it necessary or wise to abrogate it; rather, by its silence it has approved and acquiesced in the soundness and reality of the principles upon which it was decided.

We should not undermine the law by reversing a decision of this court unless it has been demonstrated to be erroneous through the failure by us to consider a statute, prior decision, material fact or other substantial feature, or unless through changed conditions it has become obviously harmful or detrimental to society — a condition the legislature will very rarely suffer to exist. Certainty is of the very essence of the law. Shifting and changing rules or principles do not constitute law. The avoidance or prevention of litigation through the establishment by the courts of fixed and certain rules is a useful and beneficent effect of the litigations had. "Certainty," says the learned and sagacious Coke, "is the mother of quietness and repose, and Incertainty the cause of variance and contentions." We are unwilling to regard the question as to the relation of the sheriff and his subordinates performing duties relating exclusively to the functions of the sheriff's office in civil matters as open to further discussion here and we adopt the language *mutatis mutandis* of the Supreme Court of the United States, used under a similar condition: If the court was wrong in the *Flaherty* case the way is open for such an amendment of the Civil Service Law or for such statute as the legislature may, in its discretion, deem proper. This court ought not now to disturb what has been so widely accepted and acted upon by the courts as having been decided in that case. A contrary course would cause infinite uncertainty, if not mischief, in the administration of the law. To avoid misapprehension it is appropriate to say that we are not to be understood as questioning the soundness of our former decision.

(*Chicago, Burlington & Q. Ry. Co.* v. *United States*, 220 U. S. 559, 577.)

The orders of the Special Term and Appellate Division should be reversed and the application for mandamus granted, with costs to the appellant in all courts.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK and HOGAN, JJ., concur; POUND, J., concurs in result; SEABURY, J., dissents.

Orders reversed, etc.