# APPELLATE DIVISION

#### OF THE

# SUPREME COURT

#### OF THE

## State of New York.

Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of AUGUSTA OBERG, Respondent, for Compensation to Herself for the Death of Her Husband, AXEL OBERG, Deceased, *v.* W. J. McROBERTS & COMPANY, Employer, and ÆTNA LIFE INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, November 15, 1916.

Workmen's Compensation Law — injury to employee engaged to guard steamship cargoes — employment not hazardous.

A company engaged in the business of supplying watchmen to steamship companies for the sole purpose of guarding their cargoes is not engaged as a longshoreman, nor is the watchman furnished a longshoreman, nor is the occupation of said watchman a hazardous employment within the meaning of the statute. Hence, where such watchman while engaged in his duties on a pier was injured by an accidental fall, he is not entitled to an award.

To justify an award it is not only necessary that the employer be engaged in a hazardous occupation, but the employee must likewise be engaged in a hazardous employment.

It is the character of the employment, not the particular place where the accident happened, which determines the classification.

APPEAL by W. J. McRoberts & Company and another from an award of the State Industrial Commission, entered

in the office of said Commission on the 24th day of December, 1915.

*James B. Henney* [*William H. Foster* of counsel], for the appellants.

*Egburt E. Woodbury, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* counsel to State Industrial Commission, for the respondent.

Woodward, J.:

The employer in this case, W. J. McRoberts & Company, is located in the city of New York and is engaged in the business of supplying watchmen to steamship companies for the purpose of watching their cargoes. The claimant is the widow of one Axel Oberg who, on the 19th of April, 1915, was employed by said company as a watchman on the pier under the control of the Bush Terminal Company in Brooklyn, and on that date he fell and sustained injuries which are claimed to have resulted in static pneumonia and his ultimate death. A witness testified as to the injury that "I was watching cotton on one of the Bush Docks, Pier ✕ 1, about 300 feet away. The railroad track is down the center of the dock. Oberg, he was watching freight right opposite of me — general merchandise. I think it was the second night I was there. He was watching about two o'clock in the morning. There was two sections of it. There is a partition running through: He went around one of those offices opposite me, and it was in the dark; there was no light in that section, but it was light on my side. Oberg, he hollered, and when I heard him holler the second time, so I went up to him, and I saw him lying on the floor. I asked him what is the matter, and he said he fell and hurt himself. I asked him how, and he said he heard some noise, and he went to investigate. He said his leg was hurt, his hip was hurt, and he could not get on his feet. So I got hold of him and dragged him into the office, put an overcoat under his head, and went to call an ambulance. The ambulance came, they looked him over and took him away. That is all I know about it."

Upon the question of an accidental injury, therefore, we are

persuaded the claimant has established sufficient to justify the conclusion that Oberg was accidentally injured, rather than being the victim of a fall from an attack of vertigo, and if the right to compensation hinged upon this question we should have little reluctance in affirming the award.

The difficulty, however, is that the statute requires that the employer shall be one "employing workmen in hazardous employments," and a hazardous employment is "a work or occupation described in section two of this chapter." An employee, to come within the provisions of the act, must be "a person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer." (Workmen's Compensation Law [Consol. Laws, chap. 67; Laws of 1914, chap. 41], § 3, as amd. by Laws of 1914, chap. 316.)* This court in *Matter of Aylesworth* v. *Phœnix Cheese Co.* (170 App. Div. 34) held that a manufacturer of cheese, employing a man exclusively in the work of gathering ice to be used by the cheese factory, was not engaged in a hazardous occupation within the meaning of the statute, although the cheese manufacturer was in fact engaged in one of the occupations declared to be hazardous. The Court of Appeals in a recent decision has declared that "Certainty is of the very essence of the law. Shifting and changing rules or principles do not constitute law. The avoidance or prevention of litigation through the establishment by the courts of fixed and certain rules is a useful and beneficent effect of the litigations had" (*Matter of Grifenhagen* v. *Ordway*, 218 N. Y. 458), and if this wholesome conception of law is to be followed the award in this case cannot be sustained.

The employer in this case is not engaged as a longshoreman; he was engaged in employing watchmen to watch cargoes, and the fact that these watchmen were subcontracted merely to watch steamship cargoes did not make the employment that of longshoremen any more than a like employment for the purpose of watching freight train cargoes. A longshoreman is defined by Webster to be "one of a class of laborers employed

---

* Since amd. by Laws of 1916, chap. 622.—[REP.

about the wharves of a seaport, especially in loading and unloading vessels," and the statute (§ 2, group 10) classes as hazardous employment in "longshore work, including the loading or unloading of cargoes or parts of cargoes of grain, coal, ore, freight, general merchandise, lumber or other products or materials, or moving or handling the same on any dock, platform or place, or in any warehouse or other place of storage." The evidence in this case, wholly undisputed, is that W. J. McRoberts & Company were engaged in hiring men to act as watchmen for steamship cargoes; that these men were furnished to the steamship companies, who paid an advance upon the wages paid by the employer, and that the employer had full charge over them, and became responsible for the goods left in charge of his employees; that these watchmen did nothing except to watch cargoes; that "the watchmen are not supposed to touch the cargoes; the watchmen I employ are usually pretty old men, not good for heavy work."

But beyond this it is not only necessary that the employer should be engaged in a hazardous occupation, but the employee must be "engaged in a hazardous employment in the service of an employer carrying on or conducting the same" (§ 3, subd. 4), and surely there is nothing in the statute which attempts to make the position of a watchman a hazardous employment. A man engaged exclusively to watch a ship cargo, having no occasion to touch the cargo in any manner, merely to see that it is not stolen, cannot either technically or in common understanding be regarded as a longshoreman. His occupation is that of a watchman, and the mere fact that it is at a dock instead of a railroad station can have no legitimate bearing upon the question here presented; he does not become a longshoreman because he is stationed upon a dock to perform his services rather than upon the shipping platform of a manufacturing plant or a railroad freight depot. It is the character of the employment, not the particular place, which determines the classification, and it is counter to the language of the statute to award compensation to one who is not at the time of his injuries engaged in a hazardous occupation, as that expression is defined in the statute. In this case the employer was not "employing workmen in hazardous

employments," nor was the deceased "engaged in a hazardous employment in the service of an employer carrying on or conducting the same" hazardous employments, and under the law as it is laid down in *Matter of Aylesworth* v. *Phœnix Cheese Co.* (170 App. Div. 34), the award cannot be sanctioned.

The award should be reversed and set aside.

All concurred.

Award reversed, and claim dismissed.