Eva Isereau, as Administratrix of the Estate of Mary Dailey, Deceased, Plaintiff, v. Albert E. Stone, Individually and as Sheriff of Onondaga County, et al., Defendants.

Supreme Court, Special Term, Onondaga County, March 12, 1955.

*Julian W. Edgcomb, County Attorney (Eli Gingold* of counsel), for defendants.

*Hilbert I. Greene* for plaintiff.

HUDSON, J. This is a motion by the defendants for an order dismissing the complaint on the ground that it appears upon the face thereof that it does not state facts sufficient to constitute a cause of action.

The action was instituted against Albert E. Stone, individually and as Sheriff of Onondaga County, and the County of Onondaga. Both defendants are represented by the County Attorney of Onondaga County.

Section 5 of article IX of the Constitution of the State of New York provides: " But the county shall never be made responsible for the acts of the sheriff."

It would seem clear under this provision of section 5 of article IX of the Constitution that the complaint does not state a good cause of action against the defendant County of Onondaga and as against such defendant, the complaint is dismissed.

As against the defendant Albert E. Stone, individually and as Sheriff of Onondaga County, a different question is presented.

This action is instituted to recover damages for the death of the plaintiff's intestate from a gunshot wound inflicted upon her by her husband. It is alleged in the complaint that about 3:00 P.M. on the 22d day of March, 1953, the defendants had been informed that the plaintiff's intestate's husband had just committed an assault with a deadly weapon upon her, had threatened her life, had left the premises promising to return and that a further assault and a possible murder were reasonably to be anticipated. The complaint further alleges that the defendants sent two deputy sheriffs to the scene in response to such notice and that such deputy sheriffs talked with the plaintiff's intestate. The complaint further alleges that a request was made of such deputy sheriffs for the aid and protection of the plaintiff's intestate and that such deputy sheriffs were informed that the plaintiff's intestate's husband was expected to return in a short time and that a further assault and possible murder was reasonably to be anticipated. The complaint further alleges that such deputy sheriffs commanded the plaintiff's intestate to aid in arresting and apprehending her husband and thereupon left the premises and abandoned plaintiff's intestate to protect herself and unreasonably and unjustifiably failed and neglected to protect her and otherwise carry out their duties to the plaintiff's intestate and further that they failed to properly act to prevent crime and apprehend those who had committed crimes and failed in their duty as conservators of the peace. The complaint further alleges that the plaintiff's intestate's husband did thereafter return, shoot and kill the plaintiff's intestate and that such death

of the plaintiff's intestate was the result of the misfeasance, non-feasance, neglect, omission and breach of duty of the defendants.

The defendants contend that the law is well established that a municipality is not liable for the failure to exercise a governmental function which includes police protection by the municipality; that the operation of a police department is a governmental function as distinguished from a proprietary function; that acts or omissions in connection with governmental functions do not give rise to liability on the part of a municipality. This contention is based upon the theory that police protection is not and never was intended to be for the benefit of an individual except as such individual was a member of the general public and that neglect in the performance of such duty by a municipality or its officers creates no liability to an individual. (*Murrain* v. *Wilson Line*, 270 App. Div. 372, affd. 296 N. Y. 845; *Steitz* v. *City of Beacon*, 295 N. Y. 51; *Ferrier* v. *City of White Plains*, 262 App. Div. 94.)

The defendants further urge that in two very recent decisions a municipality was held not to be liable under circumstances somewhat similar to those in the instant case, and that such decisions are controlling here. (*Schuster* v. *City of New York*, 207 Misc. 1102; *Rocco* v. *City of New York*, 282 App. Div. 1012.) In these cases the City of New York was held not liable for failure to prevent injury to people who had been threatened generally with bodily harm. There was no specific time and place fixed in the threats which were made and for this reason I believe there is a distinction between the facts in these cases and the present one. Here the facts could be such that an immediate assault might reasonably have been anticipated at the place where the deputy sheriffs were advised of the danger and where they were present. It cannot be said as a matter of law that they were free from any responsibility to the plaintiff's intestate if such circumstances existed.

It is urged by the plaintiff that there has been a tendency on the part of the courts in recent years to hold a municipality liable for the torts of its officials, agents or employees in those instances when it was reasonable to anticipate or foresee that the acts resulting in injury to an individual should have been anticipated or reasonably foreseen by the official, agent or employee of the municipality charged with responsibility in the matter. In support of this contention the plaintiff relies upon the following cases:

*McCrink* v. *City of New York* (296 N. Y. 99). In this case recovery was permitted against the City of New York for the

death of the plaintiff's intestate caused when a police officer, who was drunk and off duty, killed the plaintiff's intestate with his service revolver. The court held that the failure of the police commissioner to discharge the officer, whose record for drunkenness was well known, could be found by the jury to constitute a failure to exercise reasonable care when such officer was required by the city charter to carry a revolver at all times, as such circumstances should have been known to be a source of danger to the general public.

*Scolavino* v. *State of New York* (297 N. Y. 460). This case involved an attack upon an inmate of a State institution by another inmate and recovery was allowed.

There is no question but that there has been a tendency in recent years on the part of the Legislature and the courts to recognize that the principles of justice and equity require the acknowledgment of a moral duty by the State and consequently by its governmental agencies of liability for the negligent acts of its agents and employees.

The Legislature by its addition of section 12-a of the Court of Claims Act (L. 1929, ch. 467) and by its enactment of section 8 of the Court of Claims Act (L. 1939, ch. 860) waived the State's immunity to such liability.

The Court of Appeals in 1941 recognized this principle in *Bloom* v. *Jewish Bd. of Guardians* (286 N. Y. 349). At page 353, Justice LEHMAN stated: "Immunity of the State and immunity of the agent of the State from liability for wrongful acts committed by an employee of the agent, are so closely related that it would be difficult to find in logic, or in assumed principles of justice or equity, justification for the destruction of the immunity of the State while the immunity of the agent remains intact. When the court nevertheless held that the statute was intended to destroy the immunity of the State from liability for the acts of employees of the agent of the State, it, at least, created substantial ground for argument in the future that the immunity of the agent vanished with the assumption of liability by the principal." The Court of Appeals followed the same rule in *Bernardine* v. *City of New York* (294 N. Y. 361), and *McCrink* v. *City of New York* (296 N. Y. 99). In *Miller* v. *City of New York* (266 App. Div. 565), the Appellate Division, First Department, following the decision in *Bloom* v. *Jewish Bd. of Guardians* (*supra*), held the City of New York responsible for the negligence of a deputy sheriff who was driving a prison van while acting as an employee of the city rather than of the Sheriff. This decision was affirmed in 292 New York 571.

The Fourth Department in *Holmes* v. *County of Erie* (266 App. Div. 220) following the decision in *Bloom* v. *Jewish Bd. of Guardians* (*supra*) held the County of Erie responsible for injuries to a prisoner confined in the county penitentiary. Judge McCURN, at page 222, stated: " In the present case we have the county, a civil division of the State, performing a governmental function. However, the immunity of the private institution performing services relating to penal correction and that of the county in performing similar services at the county penitentiary are both based entirely upon the fact that each is performing a governmental function delegated to it by the State, the delegation carrying along with it, as an adjunct thereto, the protective immunity of the sovereign State. For each the source of the immunity is the same, the purpose the same, and the function to be protected the same. Each is engaged in carrying out the State's function. The distinction between the two situations is not sufficiently fundamental to allow us to say that the reasoning applied in the *Bloom* case to the Jewish Board of Guardians does not apply with at least equal force and persuasion to Erie County in the operation of the penitentiary. If the immunity of the State is destroyed, as stated in *Bloom* v. *Jewish Board of Guardians* (*supra*), there is no basis for holding that the county, as a civil division of the State, is still immune. The sovereign State itself not being immune, there is no immunity to a civil division of the State. When the State waived immunity and assumed liability, the immunity of its civil division, the county, vanished also." This decision was affirmed at 291 New York 798. The law, therefore, would seem to be well established in this State that under proper circumstances a municipality or agent of the State will not be immune from liability in the exercise of governmental functions.

A novel situation is presented in this case. In view of the fact that all of the cases cited above relate to municipalities which did not have the protection given counties under section 5 of article IX of the Constitution, they are not authority for the liability of a county unless it is held that the Constitution does not apply. No case has been submitted holding a county liable under such circumstances and I have been unable to find one.

Whether the Sheriff is liable either personally or in his official capacity depends, under the authorities, upon the nature of the duties he is performing, whether civil or criminal, and the question is further complicated by the nature of his liability if engaged in criminal duties only. Is he liable as an independent agent of the State or is the county liable?

Before determining this question of liability, it is necessary to consider the status of the Sheriff as a public official and also the relationship between the Sheriff and his deputies and whether the Sheriff is liable for the acts of his deputies.

The fact that a Sheriff is liable for the negligence of his deputies seems to be well established. The Sheriff and his deputies are one and the same officer. (*Broschart* v. *City of New York,* 166 Misc. 515, affd. 255 App. Div. 776; *Thomas* v. *County of Ontario,* 187 Misc. 711; Public Officers Law, § 9.) The Sheriff was held liable for the negligence of his deputies in *Miller* v. *City of New York* (266 App. Div. 565, 568): '' It has been the law that a sheriff is deemed liable for the acts, defaults and torts of his deputies relating to the discharge of civil process, for in that respect they were said to be in the service of the sheriff personally and not in the service of the county. The relation of the sheriff to his appointees in the discharge of the duties relating to matters of criminal cognizance differs from that in the discharge of civil duties. In such criminal matters it has been held that the relation between the deputy and the sheriff was not that of principal and agent, nor would the rule of *respondeat superior* apply. In criminal matters deputies were considered in the service of the public and not of the sheriff personally. (*Matter of Flaherty* v. *Milliken,* 193 N. Y. 564, at p. 569.) '' The court then went on to indicate that the immunity which formerly would seem to apply to a Sheriff no longer exists. '' Therefore, it would seem clear that if the doctrine of immunity of an agent of the State performing a governmental function still prevailed, defendant, Fitzgerald, would be immune from liability for the negligent acts of Trautwein in driving the prison van. That immunity, however, would seem to exist no longer. In *Bloom* v. *Jewish Board of Guardians* (286 N. Y. 349) decided July 29, 1941, the Court of Appeals determined that an agent of the State is no longer to be deemed immune from liability for the negligent acts of his employees in performing governmental functions, for the reason that the State itself had waived such immunity.''

Under the decisions in *Matter of Flaherty* v. *Milliken* (193 N. Y. 564) and *Matter of Grifenhagen* v. *Ordway* (218 N. Y. 451), if a deputy sheriff's duties included both civil and criminal matters so that they were not separable, it would seem clear that the Sheriff would be liable for his deputies' negligent acts or for his deputies' neglect or omission of duty.

The office of Sheriff has existed since the earliest days of English history and long before counties as we now know them ever existed.

As was said in *Matter of Flaherty* v. *Milliken* (*supra*), at page 567: " The office of the sheriff is of great antiquity and peculiar ", and in *Matter of Grifenhagen* v. *Ordway* (*supra*), at page 455: " It, through the centuries, has had fundamental characteristics and a recognized singularity." In these two cases, *Matter of Flaherty* v. *Milliken* (*supra*), at page 568, and *Matter of Grifenhagen* v. *Ordway* (*supra*), at pages 454–456 inclusive, the history of the authority of a Sheriff from the earliest days in England down to the present time is discussed, in great detail.

In addition to the statutory powers and duties which a Sheriff now has he also has those duties which were fixed at common law and which have not been abrogated by statute. These include particularly those relating to the conservation of the peace. Corpus Juris Secundum (Vol. 80, Sheriffs and Constables, § 42, pp. 211–212) sets forth the Sheriff's common-law duties as follows:

" At common law and under statutes declaratory thereof, sheriffs and deputy sheriffs and undersheriffs are peace officers. The duties of a sheriff are in a large measure the same as are imposed on police officers; he necessarily exercises police powers and must enforce the laws enacted for the protection of the lives, persons, property, health, and morals of the people. Accordingly, a sheriff must enforce the criminal law. He is under a legal duty to investigate crimes, to suppress them, and, in a proper case, to arrest and prosecute persons who commit them. It is also his right and duty to arrest all persons, with their abetters, who oppose the execution of process. As a peace officer it is the sheriff's duty to act as a conservator of the peace within his county, using, however, such force as may be necessary to preserve the peace. So it is his duty to prevent breaches of the peace and assaults and batteries, to suppress an affray, a riot, an insurrection, or an unlawful assembly, and to arrest one provoking an assault.

" In the discharge of his duty to prevent and suppress breaches of the peace and other offenses, the sheriff is bound to use all the means provided by law to accomplish such end, and he cannot shut his eyes to what is common knowledge in the community, or purposely avoid information, easily acquired, which will make it his duty to act. He is under a duty to be active and vigilant, to exercise initiative, to be reasonably

alert with respect to possible violations of law, and to use all proper efforts to secure obedience to the law."

The duty of a Sheriff to act as a conservator of the peace is set forth in *Pearce* v. *Stephens* (18 App. Div. 101, 104–105, affd. 153 N. Y. 673) : " It is the duty of a sheriff to act as a conservator of the peace within his county, and he may appoint such deputies as may be necessary to encompass that end. He is bound to suppress an affray and arrest a breaker of the peace, if the offense happen within his view. His duties are, in a large measure, in kind the same as are imposed upon police officers, and he necessarily exercises police powers. Instead of the duties devolved upon him by the common law being in conflict with the act which he is called upon to perform in his capacity as a county authority, they are, in fact, quite similar and in close alliance."

There are a number of statutory provisions applicable to a Sheriff, his duties and responsibilities.

Provision for the election of a Sheriff by the voters of a county is contained in section 5 of article IX of the State Constitution. Provision is made therein for security to be given by a Sheriff. It is here also that provision is made excepting the county from liability for the acts of the Sheriff.

The general duties of a Sheriff are set forth in section 650 of the County Law as follows: " The sheriff shall perform the duties prescribed by law as an officer of the court and conservator of the peace within the county. He shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors."

The duties of a Sheriff as an officer and arm of the court are set forth in article 13 of the Judiciary Law.

Section 1697 of the Penal Law provides for punishment of a Sheriff who allows a prisoner lawfully in his custody in any action or proceeding, civil or criminal, or in any prison under his charge or control, to escape or go at large.

The powers, duties and obligations of a Sheriff are discussed in detail in *Enstrom* v. *City of New York* (258 App. Div. 672), at page 675: " * * * it is well to bear in mind the status, duties and powers of the sheriff. The sheriff is an elected county officer. * * * He is charged with the care and maintenance of the county jail and its inmates. He serves the court's process and executes its mandates. He is, in effect, an arm of the court ", and at page 676: " Thus, while the duties and compensation of the sheriff are limited and prescribed by statute, his status as an independent agent or as a separate adjunct of the

courts and of the State remains undisturbed. * * * By reason of this independent status of the sheriff, it has been held that all his employees whose duties include civil matters are in the employ of the sheriff personally, are his agents, and are not in the employ of any political subdivision of the State.''

In *Matter of Flaherty* v. *Milliken* (193 N. Y. 564, *supra*), the court held that certain assistant deputy sheriffs, jailkeepers and matrons on the staff of the Sheriff of Kings County were not subject to the Civil Service Law. This determination was based upon the fact that such employees performed civil duties in the Sheriff's office and, as such, were employed on his personal business or that they performed both civil duties and criminal duties and, that as such duties were not separable, such subordinates must be held to be employees of the Sheriff. On the other hand, the court held that van drivers whose duties related solely to the transportation of criminal prisoners were not personal agents of the Sheriff and, therefore, were subject to the Civil Service Law. A distinction was made by the court between the Sheriff of Kings County which did not maintain a separate jail or prison for the detention of those held under criminal process and the Sheriff of New York County which maintained a separate jail or prison for the detention of prisoners charged with crime, the warden or keeper of which was not appointed by the Sheriff. The court then pointed out, at page 569: '' We think, therefore, that all appointees of the sheriff whose duty relates exclusively to the functions of the sheriff's office in criminal matters should be considered in the service of the public and not of the sheriff personally, and are subject to the civil service regulations.'' In *Matter of Grifenhagen* v. *Ordway* (218 N. Y. 451, *supra*), an effort was made to have the Court of Appeals reverse its opinion in *Matter of Flaherty* v. *Milliken* (*supra*) and require a jury clerk appointed by the Sheriff to be held subject to the Civil Service Law. The court refused to do so and reaffirmed the opinion in *Matter of Flaherty* v. *Milliken* (*supra*). It held that the jury clerk performed the duties of the Sheriff in civil matters and in performing such duties was the agent of the Sheriff and not the agent of the County of New York.

The provisions of section 5 of article IX — '' But the **county** shall never be made responsible for the acts of the sheriff '' — would seem to imply that the Sheriff was considered to be an independent agent acting in his own right as an agent of the State as distinguished from a county officer.

The inference to be drawn from these common-law and statutory requirements and the cases interpreting the same, must be:

First. That if a deputy sheriff is engaged either entirely with civil duties or both in the civil and criminal duties of the Sheriff's office so that there can be no separation of his duties, he must be considered the agent, employee, or representative of the Sheriff and not of any political subdivision of the State and the Sheriff is personally liable for any default of such an appointee and the appointee, if liable, is liable to the Sheriff and to no one else.

Second. That if the deputy sheriff is engaged solely in the criminal phase of the Sheriff's work, he is not the agent or representative of the Sheriff personally but is engaged in the service of the public, and the Sheriff would not be liable, personally, for his acts. Even though the Sheriff is an elected county officer and his duties in conserving the peace are such that he would, in serving the public in his county, seem to be a county officer in the ordinary sense of the word, the provisions of the Constitution would be controlling and in view of the decisions recognizing the peculiar nature of the Sheriff's office and the independent character thereof, he must be considered an independent agent of the State and any liability would be that of the Sheriff in his official capacity.

Whether the deputy sheriffs in the present case were engaged entirely in the criminal duties of the Sheriff's office or were engaged partially in civil and partially in criminal duties is not of great importance upon this motion as under the complaint herein recovery is sought against the Sheriff both personally and in his official capacity. A determination of such question of necessity is a determination of a question of fact and must await a trial of the action.

This action is one of four actions instituted simultaneously. Two of the actions were instituted in behalf of neighbors who were injured as a result of gunshot wounds sustained by them when the plaintiff's intestate was shot and the other action was to recover for the death of the plaintiff's intestate's husband who committed suicide after inflicting the injuries on the neighbors and killing his wife. I have dismissed the complaints in all three of those actions as against the defendants in separate opinions.* The facts and circumstances upon which the action in this case is based against Albert E. Stone, individually and as Sheriff of Onondaga County, are in my opinion considerably different than the facts in the other three actions. In this action, the notice originally given to the Sheriff had been to the effect that the plaintiff's intestate had been assaulted with a deadly

---

* See, also, *Farley* v. *Stone*, 207 Misc. 934; *Isereau* v. *Stone*, 207 Misc. 938.

weapon by her husband who had threatened her life and then left the premises promising to return under circumstances which threatened a further assault and possible murder. As a result of this information it is alleged that the Sheriff despatched two of his deputies who made inquiry and were similarly informed. Sufficient facts are not alleged to enable the court to determine upon this motion whether the deputy sheriffs were advised of an existing danger which would require them to take different steps than were taken in order to carry out their duties as police officers. The allegations of the complaint are adequate to permit proof of facts which might well present some question of fact from which it could be determined that there was a neglect or failure of the performance of a duty on the part of such deputy sheriffs so as to create a liability upon the defendant, the Sheriff of Onondaga County.

It is interesting to note that in *Rocco* v. *City of New York* (282 App. Div. 1012, *supra*), upon which the defendants rely, the complaint was dismissed at the end of the plaintiff's case.

It may well be in the present action that when the facts brought out in support of the plaintiff's cause of action become known that the defendant will be entitled to a dismissal of the complaint but at the present time it is impossible for the court to say under the allegations of the complaint that some liability does not exist. I do not believe that the Sheriff's deputies would have been justified, if the plaintiff's intestate's husband had been present at the scene with a gun with which he was threatening his wife, to have turned their backs upon him and leave without violating a duty which they then owed to the plaintiff's intestate and for which liability would have existed had they failed to perform such duty in a reasonably careful and prudent manner. The point at which liability begins or ceases depends on the facts in any given case. A determination of what really happened at the time and place in question, therefore, it seems to me must await a trial of the action, insofar as the defendant Albert E. Stone, individually and as Sheriff of Onondaga County, is concerned.

The motion, insofar as it relates to the defendant County of Onondaga is granted, without costs, and insofar as it relates to the defendant Albert E. Stone, individually and as Sheriff of Onondaga County, is denied, without costs.

Submit order in accordance with this opinion.