John D. Doyle Esq. County Attorney, Monroe County
You have asked us to reconsider our opinion of August 23, 1974, to your predecessor in which we said that a county can neither charge back to towns the cost of a sheriff's road-patrol service nor limit the provision of road-patrol service to those towns that enter into cooperative agreements with the county under which they would pay to receive such service (Article 5-G, General Municipal Law).
The significance of a charge-back or cooperative system lies in its distribution of the cost of county services to those municipalities that avail themselves of the services. For example, Monroe County consists of one large city and 19 towns, seven of which have town police forces and 12 of which do not. With minor exceptions, regular road-patrol service is supplied only to the towns that do not have their own police forces. The cost of this service is borne by all the property taxpayers of Monroe County, yet only those taxpayers living in the 12 towns receive the service.* There appears to be an element of unfairness in the system of road-patrol service as it now operates. (Note, however, our caveat toward the end of this opinion concerning population as a legal basis for allocating service.)
Section 650 of the County Law imposes on the sheriff the duty of "conservator of the peace within the county". This explicit statement of a form of "police" duty first appeared in the County Law in the codification of 1950 (L 1950, ch 691). In previous codifications of the County Law, the article on sheriffs simply referred to "duties" of the office (§§ 180[2], 181, 182), with a specific reference to having custody of county jails (§ 183) (L 1909, ch 16; L 1892, ch 686). Historically, it has been the duty of sheriffs
 "in their various jurisdictions to preserve the peace, enforce the laws and arrest and commit to jail felons and other infractors of statutory or common law * * *".
(Anderson on Sheriffs, Vol. 1, p 4 [1941], citing among other cases,Pearce v Stephens, 18 App. Div. 101, 104 [2d Dept, 1897], affd153 N.Y. 673, which held that the Legislature could designate the sheriff of Richmond County as one of the county officers who appointed members of the Board of Police Commissioners of the Richmond County Police District, noting that the sheriff's "duties are, in large measure, in kind the same as are imposed upon police officers and he necessarily exercises police powers.")
A sheriff who provides road-patrol service does so under his traditional, common law power to enforce the law. At present, sheriffs exercise this power only in portions of a county not providing its own police service.
We noted in our 1974 opinion that there is no statutory authorization for a sheriff to provide road-patrol service on a selective basis. We note now that there is no statutory mandate to do so.
 *1980 population: Monroe County 702,238 City of Rochester 241,741 Seven towns with police forces 253,062 Twelve towns without police forces 207,416[*]
In our 1974 opinion we also noted that the "sheriff is an independent elective officer". This was stated at a time when everybody accepted the fact that a sheriff was a "state officer named in this constitution" (Art XIII, § 13 [a]). As a State officer, his independence of the county was manifest. However, in 1979, the Court of Appeals held that a charter county has the constitutional home-rule power to abolish the office of sheriff and transfer the functions of the office to a newly created appointive office (Westchester County Civil Service Employees Assn. v DelBello, 47 N.Y.2d 886). We subsequently stated that Del Bello is inconsistent with the constitutional theory that a sheriff is a State officer (1979 Op Atty Gen [Inf] 259). The office of sheriff can no longer be viewed conceptually as independent of the county he serves.
In light of Del Bello we believe that a charter county such as Monroe County can amend its charter to provide that the provision of regular road-patrol service by the sheriff will be available only on a contract basis to those towns that request it. (Compare Executive Law, § 226, authorizing the Superintendent of State Police to contract with a town or village to provide police service.) We think that the power of a charter county to set forth the manner in which the county government is to function (Municipal Home Rule Law, § 33 [2]), includes the power to specify the conditions under which one of its officers, the sheriff, may provide regular police service if that service is not required for all portions of the county.
There is also a practical way by which both a charter county and a non-charter county can control a sheriff's provision of regular road-patrol service. The county legislative body by resolution can advise the sheriff and the municipalities of the county that in future years no money will be appropriated for regular road-patrol service except to the extent that towns without police forces request regular road-patrol service on a contract basis. When in our 1974 opinion we concluded that the power granted by Article 5-G of the General Municipal Law to municipalities to provide services on a contract basis was inapplicable, our reason was that each contracting party must have the power to provide the service and that this power did not exist since a county cannot operate a police department through the traditional office of sheriff and no municipality except a county can provide the services of a sheriff's department.
As we have noted earlier in this opinion, however, a sheriff has the power to enforce the law, which is what a police department does. If a sheriff provides a service to those municipalities that do not have a police force and does not provide the same service to municipalities that do have a police force and if that service is general law enforcement, the sheriff is in effect operating a "police department" even if it is called a "road patrol". The sheriff is an elected officer but his ability to provide service is subject to the county legislative body's determination of how to allocate limited resources. The legislative body can determine that road-patrol service for a portion of the county is not an effective use of resources, especially in view of the power of the affected municipalities to provide police service for themselves. If in lieu of cancellation of road-patrol service, the county offers to make it available on a contract basis, the taxpayers of the affected municipalities have the option of determining through their town boards whether providing their own police service or contracting with the county is the more effective use of their resources. Viewed in this light, we consider our 1974 opinion too narrow in its reading of the power of municipalities to enter into cooperative agreements whether under general home-rule powers or under the specific authorization of Article 5-G of the General Municipal Law.
We caution against an overly broad reading of our views on selective provision of a municipal service. In no way do we mean to imply that a county or any other municipality can tailor its provision of a general governmental service on a population or any basis other than the appropriate allocation of resources. For example, one would expect more police to patrol a high-crime area than a low-crime area; but it would not be permissible to decline any service to low-crime areas unless the residents paid extra.
We conclude that a charter county by charter law may limit the sheriff's regular road-patrol service to those municipalities without police forces that contract for the service. We also conclude that both charter and non-charter counties may decline to appropriate county funds for regular road-patrol service except to the extent that municipalities contract for the service and provide the county with funds necessary to cover the cost of the service.
* (Includes three villages, population 23,342, that have police forces and do not receive road-patrol service.)