In the Matter of the Application of MICHAEL J. FLAHERTY, as
Sheriff of the County of Kings, Appellant, *v.* CHARLES J.
MILLIKEN et al., Composing the Civil Service Commission
of the State of New York, Respondents.

1. LIABILITY OF SHERIFF FOR ACTS OF SUBORDINATES.  A sheriff is
liable for the negligence and misconduct of his subordinates in the execu-
tion of civil process to the same extent as if the fault were his own,
except where they are liable as joint tort feasors, and this to such an
extent that such subordinates are responsible to him alone and not to the
party aggrieved.   The fact that the office of sheriff is a salaried one does
not change the nature of this relation.

2. EFFECT OF CONSTITUTION AND CIVIL SERVICE LAW.   The provisions
of section 9 of article 5 of the State Constitution and section 6 of chapter
370 of the Laws of 1899 do not extend to assistant deputy sheriffs, jail
keepers and matrons in the county of Kings, since their duties relate to
civil as well as to criminal matters, and hence they are exempt from the
civil service regulations, but in cases where the duties of appointees relate
solely to criminal matters, they must be appointed in accordance with
civil service rules.

*Matter of Flaherty* v. *Milliken*, 127 App. Div. 932, reversed.

(Argued November 10, 1908; decided December 15, 1908.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered July
7, 1908, which affirmed an order of Special Term denying an
application for a peremptory writ of mandamus to compel the
defendants to certify the payrolls of the office of the sheriff
of Kings county.

The facts, so far as material, are stated in the opinion.

*Henry F. Cochrane* for appellant.   The appointees of the
sheriff's office sustain a highly confidential relation to the
sheriff, who delegates them to act in his place and stead in
matters involving discretion and the highest degree of skill
and integrity, and it is not practicable to fill such positions
by a competitive examination.  (*Blust* v. *Collier*, 62 App. Div.
458, 478; *People ex rel. Sweet* v. *Lyman*, 157 N. Y. 368;
*People ex rel. Crummey* v. *Palmer*, 152 N. Y. 217; *Crit-*

*tenden* v. *Wurster*, 152 N. Y. 352; *People ex rel. Flood* v. *Gardiner*, 157 N. Y. 520; *Matter of Breckenridge*, 160 N. Y. 107; *People ex rel. Corrigan* v. *Mayor, etc.*, 149 N. Y. 215; *People ex rel. Sims* v. *Collier*, 79 App. Div. 636.) The case presented shows positions which are from their nature exempt from examination, and the action of the commission in classifying them as competitive is palpably illegal. (*People ex rel. Scheu* v. *McWilliams*, 185 N. Y. 92; *Crittenden* v. *Wurster*, 152 N. Y. 352.)

*William S. Jackson, Attorney-General* (*Timothy I. Dillon* of counsel), for respondents. The fact that a position is a confidential one does not place it in the exempt class nor require the civil service commission to classify it as exempt. (*Crittenden* v. *Wurster*, 152 N. Y. 345.) The application of the relator was properly denied. (*People ex rel. Scheu* v. *McWilliams*, 185 N. Y. 92; *Matter of Dill* v. *Wheeler*, 185 N. Y. 106; *People ex rel. Corking* v. *McAdoo*, 113 App. Div. 770.)

CULLEN, Ch. J. This proceeding was instituted by the sheriff of the county of Kings to compel the respondents, the state civil service commissioners, to certify to the payroll of certain assistant deputy sheriffs, jail keepers, van-drivers and matrons in his office. The application was resisted on the ground that these subordinates had been appointed in violation of the rules and regulations of the civil service commission. By chapter 705, Laws of 1901, the office of sheriff was made a salaried one from the 1st of January then ensuing, and by section 2 of the act the sheriff was authorized to appoint various subordinates in his office at specified salaries. All the appointees whose rights are in controversy in this proceeding hold positions which, under the statute, the sheriff was authorized to fill. In 1900 the jurisdiction of the civil service commission was extended to the sheriff's office of Kings county, the rules of which commission placed in the exempt class 24 subordinate officers or employees who are

paid wholly from the salary or official emoluments of the sheriff, no part of which is to be returned or accounted for as public funds. When the office became a salaried one the rules of the commission were amended so as to read: "*Resolved*, That the classification of positions in the exempt class in Kings County be amended by striking out therefrom the following: ' In the office of the sheriff twenty-four subordinate officers and employees who are paid wholly from the salary or official emoluments of the sheriff, no part of which is to be returned or accounted for as public funds,   *   *   * ' and by inserting in lieu thereof the following: ' In the office of the sheriff one under sheriff, eight deputy sheriffs and counsel, one chief clerk, one secretary and one jail warden'." The other positions in the office, which included all those now before us, were made subject to be filled by competition in the ordinary method. The relator ignored the action of the civil service commission and made appointments to these positions solely of his own volition, and the question presented is as to the validity of such appointments. The Special Term held the appointments invalid and denied the relator's application. That decision has been affirmed at the Appellate Division by a divided court.

By section 9 of article 5 of the present Constitution it is ordained that " Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable shall be competitive." By the Civil Service Law (L. 1899, ch. 370, § 6) the state civil service commission is empowered to prescribe, amend and enforce suitable rules and regulations for carrying into effect the provisions of the act and of the section of the Constitution quoted. By section 2 of the statute the civil service of the state, " or any of its civil divisions or cities includes all offices and positions of trust or employment in the service of the state or of such civil division or city," with certain exceptions immaterial to this discussion.

The question which lies at the threshold of this controversy is whether the deputies, assistant deputies and other appointees of the sheriff are, as far as they discharge the duties of the sheriff relating to civil process, in the service of the county or in the service of the sheriff personally, though they are undoubtedly public officers and liable to criminal punishment as such for official misconduct. If they are not in the service of the county but in that of the sheriff, the positions held by them fall neither within the constitutional provision, nor within the purview of the statute. The office of the sheriff is of great antiquity and peculiar. Before the office in Kings county was made a salaried one, what I may term the civil business of the sheriff was plainly and exclusively his own. He, not his deputies or subordinates, was responsible for their negligence or misconduct in the execution of civil process; except in the case of independent torts on the rights of third parties, where both he and his deputies were liable as joint tort feasors. It is said in Crocker on Sheriffs (p. 147): "The sheriff is identical, in contemplation of law, with all his officers and is civilly and directly responsible for their acts, defaults, torts, extortions or other misconduct, whether it be willful or inadvertent, in the course of the execution of their duties. He is liable to the party aggrieved for any neglect in the execution of process or in returning the same, for an escape or for not paying over money collected on execution in the same cases and to the same extent as if the fault was his own." But not only is the sheriff liable for the negligence or misconduct of his subordinates, but he alone is liable, not the culpable deputy or subordinate. This has been the settled law of this state for many years. As early as the case of *Tuttle* v. *Love* (7 Johns. 470) it was held that an action would not lie against an under-sheriff for a breach of duty in his office, and that for money collected by him the action must be brought against the sheriff. In *Colvin* v. *Holbrook* (2 N. Y. 126) it was again sought by a judgment creditor to recover from a deputy sheriff money received and collected by him on an execution. It was held

that the action would not lie. It was there said by the court: " The rule, it is believed, is universal, that a known agent is not responsible to third persons for acts done by him in pursuance of an authority rightfully conferred upon him. The very notion of an agency proceeds upon the supposition that what a man may lawfully do by a substitute, when performed, is done by himself; and the individuality of the agent is so far merged in that of the principal. It is also settled, if anything can be established by authority, that an agent is not liable to third persons for an omission or neglect of duty in the matter of his agency, but that the principal is alone responsible." Now there are cases where, by statute, an officer is made responsible for the default of his subordinates, and it may be that in such cases the subordinate is in the service of the public despite of such liability on the part of his superior. But the cases cited show that the relation between a sheriff and his appointees is much more intimate. It is not merely that the sheriff is liable for the default of his appointee, but that the appointee for such default is liable to the sheriff and to no one else, and the ground on which these decisions proceeds shows exactly the nature of the relations between the two, that the appointee is regarded merely as the agent for the sheriff, and that the same rule applies as between principal and agent in ordinary private business.

Nor has the statute which makes the office of sheriff a salaried one changed the nature of the relation between the sheriff and his appointees. It is true that what may be called the profits of the business, that is, the receipts, over and above the expenses and salaries, are required to be paid into the county, but that does not make the county the principal in the business. Such a result is expressly forbidden by section 1 of article 10 of the Constitution, which provides that " the county shall never be made responsible for the acts of the sheriff," a provision which has existed since the Constitution of 1822. Doubtless the statutory provision making the office salaried and providing that the surplus shall be paid to the county is valid, but that does not, and cannot, make the county

liable for losses in the business.    It may also be that the leg-
islature might by an appropriate statute change the nature of
the relation between the sheriff and his appointees so that the
latter would no longer be strictly agents of the former but
independent public officers liable for misconduct directly to
any one injured by the same.    Assuming, however, such
power in the legislature, no such intent should be ascribed to
a statute except where such intent is very plainly indicated.
It would throw the whole law upon the subject of the liability
of a sheriff and his deputies or his appointees as it has existed
for centuries into confusion, and make one rule applicable in
one county and another rule in another.

Under the doctrine I have asserted the positions of the
eight assistant deputy sheriffs are clearly not subject to the
Civil Service Law, but as under the statute to enable them to
receive their salary it is necessary that the civil service com-
missioners should certify to their payroll, a mandamus should
issue directing such certification.    The cases of the other
appointees of the sheriff require further consideration.    We
think that the relation which the appointees of the sheriff
bears to that officer in the discharge of the criminal duties
of the office differs essentially from that borne in the dis-
charge of the civil duties of the office.    While in some
cases the sheriff may be punished by way of contempt for
the default of his appointees in criminal proceedings, as a
rule he is subject to such punishment only where to some
extent he has been personally responsible for the default;
the relation of the parties is not strictly that of principal
and agent, nor does the doctrine of *respondeat superior*
apply.    In the county of New York there is a separate jail
or prison for the detention of persons charged with crime,
the warden or keeper of which is not appointed by the sheriff.
We think, therefore, that all appointees of the sheriff whose
duty relates exclusively to the functions of the sheriff's office
in criminal matters should be considered in the service of
the public and not of the sheriff personally, and are subject
to the civil service regulations.    The difficulty in the present

case is that there are not separate jails or prisons in Kings county for detention under civil process and detention under criminal process, though persons detained under the differing processes are required to be held in different parts of the jail. The duties of the jail keepers and matrons, as shown by the affidavits, relate to both civil and criminal prisoners. For the escape of a civil prisoner the sheriff is personally liable. Hence, so long as there is no separation of the duties, we think those subordinates must also be held exempt from the civil service regulations. The duties of the drivers of the vans relate solely to the transportation of criminal prisoners. Therefore, they are not mere personal agents and must be appointed in accordance with the civil service rules.

The orders of the Special Term and Appellate Division should be reversed and the application for mandamus granted so far as relates to the several appointees named in the moving papers, with the exception of the van drivers, and as to them denied, without costs to either party in any court.

GRAY, HAIGHT, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Orders reversed, etc.