Lillian Enstrom, Individually and as Administratrix, etc., of Arthur Enstrom, Deceased, Appellant, *v.* The City of New York, Respondent, Impleaded with John Timlin, Individually and as Sheriff of the County of Richmond, and William Riehl, Defendants.

Robert Matthews, Individually and as Administrator, etc., of Mabel Matthews, Deceased, Appellant, *v.* The City of New York, Respondent, Impleaded with John Timlin, Individually and as Sheriff of the County of Richmond, and William Riehl, Defendants.

Second Department, March 4, 1940.

*Robert R. Bauman,* for the appellant Lillian Enstrom.

*Joseph P. Walsh,* for the appellant Robert Matthews.

*George J. Conway* [*William C. Chanler, Corporation Counsel; Paxton Blair* with him on the brief], for the respondent.

JOHNSTON, J.   These two actions to recover damages for wrongful death and personal injuries were tried together.   Plaintiffs were nonsuited and they appeal.

About one o'clock in the morning of April 25, 1935, in the county of Richmond, a Nash automobile owned and operated by one Richard Wood collided with a Packard automobile registered in the name of " Sheriff, Richmond County," as owner, and operated by William Riehl.   Mr. and Mrs. Enstrom and Mr. and Mrs. Matthews were passengers in the Nash car.   As a result of the accident Mr. Enstrom and Mrs. Matthews were killed and Mrs. Enstrom and Mr. Matthews were seriously injured.   These actions were then brought against the city of New York, William Riehl, and John Timlin, individually and as sheriff of the county of Richmond. Prior to the trial the actions were discontinued as to Riehl and severed as to Timlin.   At the close of plaintiffs' case the complaints were dismissed as to the city.   The court assigned no reason for

the dismissal, but we assume, as do counsel, that the court held as matter of law that the city was not liable for Riehl's negligence.

Riehl is a State civil service employee. On May 1, 1933, he was appointed from a State civil service list to the position of auto engineman and assigned to the office of the sheriff of Richmond county, where he continued until the date of the accident. Who appointed Riehl does not appear. He was on the city's payroll, which bears the certification of the State Civil Service Commission; he was paid directly by the city; and he was a member of the city retirement system. Riehl's duties were varied and his hours not fixed. He drove the sheriff during the daytime and sometimes at night. In addition, he drove the sheriff's deputies while they were engaged in performing their official duties, both civil and criminal. It is not disputed that about four o'clock in the afternoon of April 24, 1935, Riehl, accompanied by the sheriff and the latter's son Hughie, who was not attached to the sheriff's office, left the sheriff's office in the Packard and went to the sheriff's home. Riehl then took Hughie to the Bayonne Ferry, returned the Packard to the city's garage about four-thirty P. M., and went home in his Ford.

Riehl and his wife accepted the sheriff's invitation to be his guests that evening at a dinner at the Elks Club. About seven-forty-five P. M. Riehl went to the garage in his Ford and took the Packard to his home, where he was joined by his wife and, pursuant to the sheriff's instructions, went to the Bayonne Ferry, where he met Hughie. They then proceeded to the sheriff's house, where they were joined by the sheriff, his wife and daughter and they all went to the Elks Club, where they remained until twelve-thirty A. M., when they returned to the sheriff's home. The accident occurred about one-half hour after Riehl left the sheriff's home.

On the trial Riehl testified that shortly before one A. M. the sheriff told him to drop Hughie at the Bayonne Ferry and put the Packard away. On his examination before trial Riehl had testified that when he left the sheriff and his wife and daughter at their home, the sheriff told him to take the Packard to the city's garage and take Hughie to the Bayonne Ferry in Riehl's Ford. Plaintiffs make much of this conflict in Riehl's testimony, but in my view of the case it is unimportant, for in either case the city cannot be cast in liability.

While the city denies it owned the Packard automobile, the proof clearly shows it was purchased by the city and kept at the city's garage and that the city paid all the expenses of maintenance and repair. It is true the certificate of registration shows the owner was listed as " Sheriff, Richmond County," but this is of little consequence because it appears from the certificate that no fee was paid for the registration; and exemption for the payment of registra-

tion fees is allowed only with respect to a motor vehicle which is owned or controlled by a municipality. (Vehicle and Traffic Law, § 11, subd. 6.)

The liability of the city for Riehl's negligence, which we assume was the sole cause of the accident, depends upon whether or not at the time of the accident (1) the relationship of master and servant existed between them; (2) Riehl was engaged in the furtherance of the city's corporate or municipal business; or (3) he was engaged in performance of some governmental function on behalf of the State or its political subdivision.

Plaintiffs contend that the relationship between the city and Riehl was master and servant. We think not. Concededly Riehl was under the supervision and subject to the direction of the sheriff. Hence, in determining the relationship between the city and Riehl, it is well to bear in mind the status, duties and powers of the sheriff. The sheriff is an elected county officer. (County Law, § 180.) He is charged with the care and maintenance of the county jail and its inmates. He serves the court's process and executes its mandates. He is, in effect, an arm of the court. As a matter of historical development, it may be noted that originally the sheriff, as a direct representative of the crown or sovereign, performed these and other services on a fee or commission basis. He personally was expressly charged with all the duties and responsibilities of the office. He was " ' identical, in contemplation of law, with all his officers and is [was] civilly and directly responsible for their acts, defaults, torts, extortions or other misconduct, whether it be willful or inadvertent, in the course of the execution of their duties.' " (*Matter of Flaherty* v. *Milliken*, 193 N. Y. 564, 567; *Matter of Grifenhagen* v. *Ordway*, 218 id. 451.)

Later statutes have not changed the independent status of the sheriff, but they do provide that in lieu of the fees formerly received, the sheriff of Richmond county, as well as the sheriffs of other counties in the city of New York, shall receive a fixed salary. (County Law, §§ 199-aa, 199-bb, 199-cc, 199-dd, 199-ee.) In addition, in the county of Richmond the sheriff is entitled " to the fees paid by private persons in all civil cases." He is also entitled to his actual disbursements for travel while attending to the transportation of any person whom he is required by law to apprehend or transport, where the cost thereof is made by law a county charge, the bill for such disbursements to be presented to the comptroller of the city of New York. (County Law, § 199-ee, subsec. 2, and § 240.)

The sheriff is required to pay the salaries of assistants whose salaries are not specifically provided for, but the statute contains this specific provision with respect to the appointment of subordi-

nates and their salaries: " The sheriff shall employ an under-sheriff, a deputy sheriff, a counsel, and such other deputy sheriffs and other officers and employees as the board of estimate of the city of New York may authorize, at salaries to be fixed by such board and to be paid by such city." (County Law, § 199-ee, subd. 3, cl. [a].) The sheriff is also authorized to employ other persons, such as a jailer and cook, and the statute allows the sheriff for such employees " such sum as may be authorized by the board of estimate of the city of New York." (§ 199-ee, subd. 3, cl. [b].) These statutory provisions of the County Law are substantially a codification of the prior statutes. (Laws of 1896, chap. 392; Laws of 1911, chap. 701; Laws of 1917, chap. 473.)

Thus, while the duties and compensation of the sheriff are limited and prescribed by statute, his status as an independent agent or as a separate adjunct of the courts and of the State remains undisturbed. (*Matter of Flaherty* v. *Milliken, supra; Matter of Grifenhagen* v. *Ordway, supra.*) While by statute the sheriff is authorized to employ certain specific officers and such others as may be authorized by the board of estimate, yet in all cases he is the one who does the employing. As to those whom he is not specifically authorized by statute to employ, the city merely authorizes their employment and fixes the measure of their compensation; it does not itself employ.

By reason of this independent status of the sheriff, it has been held that all his employees whose duties include civil matters are in the employ of the sheriff personally, are his agents, and are not in the employ of any political subdivision of the State. Hence, such employees of the sheriff are not subject to the regulations of the Civil Service Law or of the Civil Service Commission. (*Matter of Flaherty* v. *Milliken, supra; Matter of Grifenhagen* v. *Ordway, supra; Matter of Quirino* v. *Dempsey,* 252 App. Div. 793.) In the *Milliken* case the court held that the State Civil Service Commission's certification of the sheriff's payroll is required.

It also should be noted that the Constitution (Art. IX, § 5, formerly art. X, § 1) provides that " the county shall never be made responsible for the acts of the sheriff." While the statute expressly exempts the city of New York from liability for the acts of the sheriff of New York county (County Law, § 199-aa, subd. 18), it does not contain a similar provision with respect to the sheriff of Richmond county.

It is admitted that all expenses involved in the operation, conduct and management of the office of the sheriff of the county of Richmond were and are county charges, subject to audit and payment by the city, and that it was and is the duty of the city to furnish

the sheriff with such equipment as may be necessary for the proper conduct of his office. In discharging this duty the city furnished the Packard automobile and paid for the services of Riehl.

While the city carried Riehl on its payroll and treated him as a regular city employee, it is clear that under the statutes and by virtue of the prerogatives inherent in the duties and powers of the sheriff, Riehl was in the employ of the sheriff. This practice of carrying a county employee on the city's payroll and treating him for all practical purposes as a city employee is not novel. A similar practice is followed with respect to the clerks and attendants in the Supreme Court, Kings county. But obviously this practice cannot operate to remove the court's clerks and attendants from the employ of the court. Nor does it operate to remove the assistants of the sheriff from his employ. The fact that the city payrolls which carry State or county employees are approved by the State Civil Service Commission, and not by the municipal civil service commission, indicates that the employees listed on such payrolls are deemed to be in the service of the State or county and not in the service of the city. (Civil Service Law, § 20.)

Assuming, however, that Riehl be deemed an employee of the city, nevertheless, it is undisputed that at all times he was under the control and subject to the direction of the sheriff. Granting that the city initially had control of Riehl, it surrendered control. Hence, regardless of who Riehl's general employer may have been, while he worked for the sheriff the sheriff was his master. Therefore, the sheriff and not the city was responsible for Riehl's negligence while Riehl was engaged in the service of the sheriff. (*Wyllie* v. *Palmer*, 137 N. Y. 248, 258; *Schmedes* v. *Deffaa*, 214 id. 675, revg. 153 App. Div. 819, on dissenting opinion of MILLER, J.)

Plaintiffs also urge that if Riehl were in the service of the sheriff up to the time he left the sheriff, his wife and daughter at their home, he was in the service of the city at the time of the accident. This contention is predicated upon Riehl's testimony in his examination before trial that when the accident occurred he was returning the automobile to the city's garage. But assuming that Riehl was in the city's employ at the time of the accident, it appears that during the night in question the automobile was used by both the sheriff and Riehl and their families for their own private purpose and personal convenience. In our opinion Riehl's service for the sheriff commenced about seven-forty-five P. M., when he took the automobile from the garage and did not terminate until the automobile was returned to the garage. It may be true, as plaintiffs urge, that the sheriff, being a peace officer, is always on duty; but the fact is that at no time during the evening did he exercise any of his official

functions. Therefore, the taking of the car to the garage was not a return to the performance of official duty. It was a termination of the private use. Under any circumstances, the consent of the sheriff to the use of the city's automobile for a private purpose cannot subject the city to liability for the negligence of the operator. The sheriff has no authority to permit the use of the car for such purpose. (*Fox* v. *City of Syracuse*, 231 App. Div. 273, and cases cited; affd., 258 N. Y. 550.)

Nor does section 59 of the Vehicle and Traffic Law apply, since Riehl at the time of the accident was not acting within the scope of his employment; that is, assuming he was in the employ of the city. (*Irwin* v. *Klein*, 271 N. Y. 477; *Psota* v. *Long Island R. R. Co.*, 246 id. 388.)

Plaintiffs contend that actually or potentially the sheriff and Riehl were engaged in their official capacity throughout the evening. If this be true, then they were engaged in the performance of governmental functions. In the absence of statute there can be no liability on the part of any political subdivision of the State for the negligence of its officers while so engaged; the officer or agent whose negligence caused the damage is solely responsible. (*Wilcox* v. *City of Rochester*, 190 N. Y. 137; *Hughes* v. *County of Monroe*, 147 id. 49; *Ham* v. *Mayor*, 70 id. 459; *Maxmilian* v. *Mayor*, 62 id. 160; *Murphy* v. *Incorporated Village of Farmingdale*, 252 App. Div. 327.)

It may be noted, incidentally, that there is a statute (General Municipal Law, § 50-a) which does, under certain circumstances, impose liability on a municipality for the negligent operation of a municipally-owned vehicle upon the public streets even though such operation is in the performance of a governmental function. But while this statute removes the immunity of the political subdivision, it fastens responsibility upon it only when all the other elements of liability are present, namely, the negligence must be the negligence of a person *duly appointed by* the municipality and at the time of the accident such person must be engaged in the discharge of his duties and within the scope of his employment. In the case at bar, assuming that Riehl was in the employ of the city, there is no proof that he was *duly appointed by the city*. The record is silent as to who exercised the power of appointment, but we assume, in view of the powers of the sheriff and the relationship between him and his employees, that he exercised the power. In any event, as already pointed out, if Riehl be deemed an employee of the city, nevertheless at the time of the accident he was not engaged within the scope of his employment by the city. Hence the statute cannot aid the plaintiffs.

The judgments dismissing the complaints should be affirmed, with costs.

Present — LAZANSKY, P. J., HAGARTY, CARSWELL, JOHNSTON and CLOSE, JJ.

Judgments dismissing the complaints unanimously affirmed, with costs.