Charles J. Gaughan, J.
This is an appeal from an order of the City Court of Buffalo (Bellomo, J.) denying the motions of the defendants John Tutuska, Sheriff of Erie County and Ida Gelia to dismiss the complaint as against them for failure to allege a cause of action. The complaint sets forth that plaintiff Anna Foyster, while serving as a juror in the matter of the People v. Robert Bogan, suffered an injury to her person partly through the alleged negligence of Ida Gelia, a Deputy Sheriff of Erie County, who at the time of the injury and pursuant to her duties was escorting the Bogan jurors during their deliberations.
The defendants contend that Ida Gelia was engaged in performing functions of a Sheriff pertaining to criminal matters when the accident occurred and that (1) the Sheriff is not responsible for the negligent acts of his deputies committed in the performance of their duties in criminal matters, and (2) a Sheriff and his deputies are not responsible for negligent acts committed while in the service of the public. They base their first contention on the claim that the principle of respondeat superior does not apply in such cases. The second contention is founded, they claim in sovereign immunity. Quoting from page 3 of the appellants ’ brief:
“ Pursuant to the law that ‘ the king could do no wrong ’, the sovereign immunity extended to the king’s viceroy, the sheriff, while engaged in the service of the public, that is, while engaged in activities connected with enforcement of the criminal law.
“ This immunity continued to the sheriff in American law, and in New York law.
*304 ‘ ‘ Even though the State has waived its immunity for damages caused by the torts of its officers or employees while acting as such, the county’s immunity from liability by reason of acts of the Sheriff is constitutionally guaranteed, so that the Sheriff’s immunity continues. ’ ’
At common law, the Sheriff was the executive arm of the sovereign within the county. In New York, until 1846, he was appointed directly by the Governor. He has since become a public local official subject to the electorate of the county, although he may be removed by the Governor before the expiration of his term. (N. Y. Const., art. XIII, § 13, subd. [a].) Like the District Attorney, County Clerks and County Register, the Sheriff owes his present existence in New York to the Constitution (N. Y. Const., art. XIII, § 13, subd. [a], formerly art. IX, § 5).
As a result of the American Revolutionary War, sovereignty, with its concomitant immunity, over New York passed from the kings of England to the People of the State of New York. Likewise, the Sheriff’s authority and power, including his derivative immunity, if any, flowed no longer from these kings, but from the People of the State of New York. The State, however, through section 8 of the Court of Claims Act waived its sovereign immunity from liability: “ The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ”.
The Court of Appeals has interpreted this language to have withdrawn the support upon which the immunity of municipalities and political subdivisions of the State had rested. (Holmes v. County of Erie, 291 N. Y. 798, affg. 266 App. Div. 220 [1943]; Bernardine v. City of New York, 294 N. Y. 361 [1945].) A similar conclusion was arrived at in Bloom v. Jewish Bd. of Guardians (286 N. Y. 349, 352) when the court said: “ The statute ‘ constitutes a recognition and acknowledgment of a moral duty demanded by the principles of equity and justice ’ * * * The same principles of justice and equity which constrained the State to reject the immunity conceded to it as sovereign, dictates the conclusion that the derivative immunity of the agent does not survive when the immunity of the principal is destroyed.” Such a rule must be equally applicable to a Sheriff. Walker v. State of New York (207 Misc. 665 [1954], affd. 3 A D 2d 812 [4th Dept.]) has been advanced as authority that a Sheriff and his deputies are not agents of the State. This case is clearly confined to its facts because of the parties *305 and tlie cause of action proposed. It cannot be rationally advocated that the Sheriff and his deputies are not affected by the State’s waiver of immunity because they are not agents, servants or employees of the State and at the same time claim an immunity which actually would derive from the exercise of governmental functions of the State performed in the county, which is a subdivision of the State by an official given existence by the People of the State.
We hold therefore, that by reason of section 8 of the Court of Claims Act, neither a Sheriff nor his deputies are immune from liabilty for their tortious conduct while engaged in the performance of the functions of the Sheriff’s office in criminal matters. Such a holding is not inconsistent with the result in Commisso v. Meeker (8 N Y 2d 109 [1960]) wherein a judgment, against a Deputy Sheriff resulting from his negligent conduct while issuing a traffic summons, was affirmed.
Having determined that a Sheriff and his deputies are not clothed with immunity from liability in the performance of their duties in criminal matters, it remains whether in such cases, the Sheriff can be held responsible for the negligence of his deputies.
In 1908, the Court of Appeals discussed this question in deciding whether or not Deputy Sheriffs were subject to civil service regulations: “ [T]he relation of the parties is not ■strictly that of principal and agent, nor does the doctrine of respondeat superior apply. * * * We think, therefore, that all appointees of the sheriff whose duty relates exclusively to the functions of the sheriff’s office in criminal matters should be considered in the service of the public and not of the sheriff personally, and are subject to the civil service regulations.” (Matter of Flaherty v. Milliken, 193 N. Y. 564, 569.)
This thinking was reconsidered and reaffirmed in two other sheriff-civil service matters in 1916. (Matter of Grifenhagen v. Ordway, 218 N. Y. 451; Matter of O’Brien v. Ordway, 218 N. Y. 509.) Subsequently, and after the enactment of what is now section 8 of the Court of Claims Act the First Department felt that the Sheriff was no longer immune from the negligent acts of a deputy performing a governmental function. The court, however, decided the controversy on other grounds. (Miller v. City of New York, 266 App. Div. 565 [1943].) The dicta indulged in Miller v. City of New York (supra) was not referred to by the court in Isereau v. Stone (3 A D 2d 243 [1957]). There the Fourth Department, in reversing the order of the Onondaga County Supreme Court which denied a motion to dismiss the complaint as against Stone, sued individually and *306 as Sheriff, for failure of his deputies to prevent the killing of the plaintiff’s intestate after notice, based its decision solely on the Flaherty, Grifenhagen and O’Brien cases (supra), that is, that the rule of respondeat superior did not apply since the deputies were considered in the service of the public and not the Sheriff personally. Notwithstanding this, we feel that a rule based upon the rationale previously enunciated by the same court in imputing the negligence of a physician to the State is in keeping with the moral and equitable principles upon which waiver of immunity is founded. “ It is our opinion that section 8 of the Court of Claims Act not only waived the State’s immunity to suit and liability, but also made applicable the rule of respondeat superior to all officers, servants, agents and employees of the State ” (McCrossen v. State of New York, 277 App. Div. 1160 [1950]).
In Domino v. Mercurio (17 A D 2d 342 [1962]), Judge Halpern traced the parallel development and final acceptance and application by the courts of respondeat superior to Boards of Education for negligence of their employees, and to the State and its political subdivision for negligence of municipal and State hospital employees.
The trends can be easily seen. Prior to the waiver of immunity by the State, the courts were oriented towards immunity and were constrained to clothe local officials and municipalities with the mantle of the sovereign immunity through the device of ‘ ‘ performance of governmental functions” as distinguished from proprietary or administrative functions. That is, that when an employee of a municipality or public official negligently performed a duty which could be classified as the exercise of a governmental function, he was acting not for the municipality or official but for the public and thus the municipality or official could not be held liable. Is this not, in effect, the application of respondeat superior, looking to the principal for the misdeeds of the agent, in another manner! The effect is to avoid liability of the municipality by bringing the wrongful acts within the immunity of the State.
The courts failed to recognize the impact of the general abolition of governmental immunity with their failure to apply the principle of respondeat superior. Now this principle applies to all municipalities, its adjuncts and agents including the counties. It should be and is here applied as being the logical extension of the rules considered in Bernardine v. City of New York (supra) and Domino v. Mercurio (supra).
There is one further matter which merits some comment. It was conceded by the parties that the Sheriff is liable for the *307 tortious conduct of Ms deputies in the performance of their duties in civil matters. This resulted in much argument over whether Ida Gelia was performing civil or criminal duties when the accident occurred. It is not necessary to make this distinction since it is decided herein that the Sheriff is liable for acts of his deputies in criminal matters as well as civil.
The orders appealed from are therefore affirmed.