John H. Doerb, J.
The plaintiff, Michael A. Amico, Sheriff of Erie County (hereinafter referred to as “Amico”), has brought an action for a declaratory judgment against the Erie County Legislature, B. John Tutuska (the Erie County Executive), and Donald M. Neff (the Personnel Commissioner of Erie County), to declare Local Law No. 2 of 1969 (Local Laws, 1969, No. 2 of County of Erie) unconstitutional, illegal and invalid in that it is in violation of section 6 of article V of the New York State Constitution, section 209-q of the General Municipal Law, section 41 (subd. 1, par. [b]) of the Civil Service Law and section .2002'of the Erie County Charter (Local Laws, 1959, No. 1 of County of Erie, as amd.), and that it is vague, indefinite and indeterminative as to its application.
Local Law No. 2 of 1969 reads as follows:
‘ ‘ A local law amending the charter of the county of Erie in relation to placing certain employees of the Erie county sheriff in the classified service under the Civil Service Law of the state of New York.
“Be it enacted by the county legislature of thv county of Erie as follows:
“ Section 1. The Erie county charter is hereby amended by adding thereto a new section, to be section 1503 to read as follows;
*831 “ § 1503. Deputies and employees. All deputies and employees of the sheriff of Erie county except the undersheriff, the secretary to the sheriff, and his civil deputies, are hereby placed in the competitive classified service and shall be hired by competitive examinations under the provisions of the Civil Service Law of the state of New York, and such deputies and employees shall be subject to and governed and controlled by the rules and regulations of the New York State department of civil service.
“ § 2. Notwithstanding the provisions of the foregoing, however, all employees of the sheriff, except the undersheriff, the secretary to the sheriff and his civil deputies, who have served for one year in their respective positions prior to the effective date of this local law, shall be covered in their respective positions without examination.
“ § 3. This local law shall become effective immediately.”
A brief background of events preceding, not necessarily leading to, the enactment of Local Law No. 2 of 1969 and this proceeding might be helpful. The defendant, Tutuska, served as Sheriff of Erie County from September 1,1959 to November 30, 1968 and since that time has been County Executive of Erie County. Upon his ascension to the office of County Executive, a successor to former Sheriff Tutuska was duly appointed on December 5, 1968 and served until December 31, 1969. The plaintiff, Amico, was elected Sheriff of Erie County on November 4, 1969 and his term of office commenced January 1, 1970. Up to this time all employees and deputies in the Sheriff’s department were appointed by the Sheriff and served at his pleasure.
On October 22,1969 the Erie County Legislature enacted Local Law No. 2 of 1969 and it was signed into law by defendant Tutuska on November 25, 19691, ‘ ‘ effective immediately ’ ’.
The action was commenced by the service of a summons and complaint upon the defendants along with an order to show cause why the relief demanded in the complaint should not be granted and further asking that the defendants, their agents and employees be stayed from acting under or implementing said Local Law No. 2 of 1969.
On the return date of the order to show cause, the court restrained all parties from acting under Local Law No. 2 of 1969 until the matter was finally determined. The court also directed the plaintiff to refrain from exercising what he regarded as his prerogative to replace whichever Deputy Sheriffs he wished With his own appointments, plaintiff’s position being that Deputy Sheriffs serve at the will of the Sheriff.
Subsequently, but before the time to answer had expired, the County Attorney on behalf of the defendants moved to dismiss *832 the complaint pursuant to CPLR 3211 (subd. [a], par. 7) on the ground that the complaint failed to state a cause of action. On the return date of that motion, the parties in open court stipulated that the action was properly one for a declaratory judgment and the parties stipulated that the proceeding under article 78 CPLR be discontinued. The plaintiff then amended his pleadings in the action for a declaratory judgment by dropping certain parties defendant. The defendants then requested that the court consider their motion to dismiss the complaint as aforesaid or to treat the motion as one for summary judgment, pursuant to subdivision (c) of CPLR 3211. The defendants submitted extensive affidavits in support of the motion. The plaintiff also moved in open court for summary judgment based upon the amended complaint and the defendants’ affidavits.
The question to be answered in a motion to dismiss made under CPLR 3211 (subd. [a], par. 7) is whether a complaint properly states a cause of action, not whether the plaintiff has any substantial hope of proving one. (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3211.37.) Every pleading question should be approached in the light of the salutary legislative enactment that 1 ‘ Pleadings shall be liberally construed. Defects shall be ignored if a substantial right of a party is not prejudiced.” (CPLR 3026.) The test of prejudice is of primary importance. “ We would invariably disregard pleading irregularities, defects or omissions which are not such as to reasonably mislead one as to the identity of the transactions or occurrences sought to be litigated or as to the nature and elements of the alleged cause or defense.” (Foley v. D’Agostino, 21 A D 2d 60, 66.)
In the instant case there is a complaint which sets forth a cause of action for a declaratory judgment with particularity as to the occurrences leading to the enactment of the local law complained of, the reasons for the plaintiff’s belief that such law is unconstitutional and invalid, and the relief sought.
After reviewing the pleadings, including the affidavits submitted on behalf of the defendants, and hearing arguments of counsel, the court will treat the motions made as motions for summary judgment.
The principal thrust of Local Law No. 2 of 1969, simply put, is to place certain employees of the Erie County Sheriff in the classified service under the Civil Service Law of the State of New York. The law has a twofold impact upon the Sheriff’s department as it was constituted and operated prior to the legislative enactment complained of: 1. with the exception of two designated appointees of the Sheriff and his ‘1 civil deputies ”, all employees of the Sheriff are to be hired by com *833 petitive examinations under the provisions of the Civil Service Law of the State of New York, and 2. with the exception of two designated appointees of the Sheriff and his “ civil deputies ”, all employees of the Sheriff who had served in their respective positions for one year prior to the enactment of the law would be covered into their respective positions without examination.
From an examination of the line budget proposals for the year 1970 submitted as an exhibit with the affidavits on behalf of the defendants, it would appear that the plaintiff Amico, instead of having potentially (assuming everyone in the Sheriff’s department had served in their respective positions for one year) about 467 appointments to make upon assuming office, had only about 82 appointments at his disposal because of Local Law No. 2 of 1969. This is mentioned merely in an attempt to grasp the over-all picture of the effect of the legislation upon the plaintiff in his elected capacity, and the accuracy of the court’s interpretation of the line budget is questionable since only the appellation ‘ ‘ Deputy Sheriff, Civil ’ ’ has been included in the court’s numerical conclusions. The line budget characterizes as “ deputy ” many other positions, such as stenographer, clerk-typist, account clerk, cashier, telephone operator, etc., which the court has not included in the designation ‘£ civil deputies ”. No one has ever adequately explained to the court what a ‘ ‘ civil deputy ” is in the light of the statute and the realities of the Sheriff’s office as it was constituted at the time the statute, was enacted, and after. Arguments of counsel did concentrate on the role of a “ civil deputy ’ ’ as opposed to a £ £ criminal deputy ’ ’, as did some of the affidavits and both briefs dealt largely with this role.
The notion of competitive civil service was an enlightened design in its conception and is an enlightened design today. Professionalism in public employment is highly desirable and becomes each day more essential to the efficient and orderly management of government in the growing complexities of that government as a responsive agency to the needs of a community. This court feels, however, that competitive civil service cannot be enacted virtually en masse for a department of government without delicate attention being given to existing laws which affect the department or employees or the elective office which will be influenced by such legislation.
Section 6 of article V of the New York State Constitution provides the primary directive for civil service appointments: 1 ‘ Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascer *834 tained, as far as practicable, by examination which, as far as practicable, shall be competitive ’
The civil service of the State and each of its civil subdivisions is divided into the classified and unclassified service. (Civil Service Law, § 35.) The unclassified service roughly comprises elective offices, officers and employees of the State Legislature and other legislative bodies, appointments by the Governor, governmental department heads, members and employees of boards of election, and persons employed in educational service. (Civil Service Law, § 35.)
The classified service of the State and each of its civil subdivisions is comprised of all offices and positions not included in the unclassified service, which is then broken down into four classes: the exempt class; the noncompetitive class, the labor class and the competitive class. (Civil Service Law, § 40.) From an examination of the law (Civil Service Law, §§ 41, 42, 43, 44) it is clear that employees of the Sheriff fall in the exempt class (§ 41, subd. 1, par. [b]), “ The deputies of principal executive officers authorized by law to act generally for and in place of their principals ’ ’.
An examination into the law as it relates to the office of Sheriff is appropriate at this time. The office of Sheriff is constitutional (N. Y. Const., art. XIII, § 13) and the “ county shall never be made responsible for the acts of the sheriff ”. (N. Y. Const., art. XIII, § 13, subd. [a]; Matter of Flaherty v. Milliken, 193 N. Y. 564; Matter of Grifenhagen v. Ordway, 218 N. Y. 451.) (This caveat would appear to have been pre-empted by Bernardine v. City of New York, 294 N. Y. 361.)
The duties of the Sheriff are defined in section 650 of the County Law: “The sheriff shall perform the duties prescribed by law as an officer of the court and conservator of the peace within the county. He shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors.”
The powers of appointment of the Sheriff are contained in section 652 of the County Law which gives the Sheriff the authority to appoint an Undersheriff to serve during his pleasure (subd. 1) and within the limits of the appropriation made for his department to appoint as many regular Deputy Sheriffs as he may deem proper but not exceeding one for every three thousand inhabitants of the county (subd. 2). He may also appoint a jail matron to serve at his pleasure and also keepers, guards, clerks and employees authorized by the Board of Supervisors to serve at his pleasure. Any person may be deputized *835 by the Sheriff by a written instrument to do particular acts (subd. 2).
The County Law (§§ 653, 654, 655) authorizes the Sheriff to employ part-time deputies as he may deem necessary and within the limits of budget appropriations to perform duties authorized by him, to deputize peace officers of cities, towns and villages, and additional special deputies as he deems necessary during an emergency.
Section 1502 of the Brie County Charter defines the powers and duties of the Sheriff: “The sheriff shall have and exercise all powers and duties now or hereafter conferred or imposed upon him by any applicable law. He shall perform such additional and related duties as may be prescribed by local law.”
The Brie County Administrative Code (Local Laws, 1960, No. 1), adopted pursuant to section 2001 of the Erie County Charter, sets forth the powers and duties of the Sheriff in substantially the same language as section 1502 of the Erie County Charter. (Erie County Administrative Code, § 15.02.) Section 15.03 of the Erie County Administrative Code is largely a codification of the provisions of the County Charter cited above dealing with the appointment by the Sheriff of an Undersheriff and a staff of deputies, clerks and employees, etc. to help Mm carry out the duties of his office. Subdivision e of section 15.03 of the Erie County AdmiMstrative Code deals with the nature of the appointment made by the Sheriff: ‘ ‘ Each appointment or revocation thereof made pursuant to this article shall be in writing and filed in the office of the county clerk. All persons appointed pursuant to this article shall serve during the pleasure of the sheriff.” (Emphasis supplied.)
The Administrative Code of Erie County was not amended by Local Law No.*2 of the Local Laws of 1969 or any other act of the County Legislature, and article XV of said code stands in direct conflict with Local Law No. 2 of 1969.
Viewed in a broad spectrum then, the Sheriff is an officer of the court . and conservator of the peace. He may make such appointments as are prescribed by law and in the manner defined by statute. Persons appointed by the Sheriff shall serve at Ms pleasure. Nowhere in the abové-cited legislation, nor for that matter in any law that the cojirt has examined, are the duties of the Sheriff set forth in any further detail or with an atmosphere of separability, that is, criminal, vis-a-vis civil. It is in Local Law No. 2 of the Local Laws of 1969 that the term “ civil deputy ” is used for the first time as far as the court can determine. The term ‘ ‘ civil deputy ’ used in the statute, logically implies its opposite cgunterpart “ criminal deputy ”, a term not *836 employed in the statute. In fact the line budget-attached to the defendants’ affidavits uses the qualifying word “criminal” after the word “ deputy ” for the year 1970 for 124 job positions. There are a number of other positions listed in the line budget from which it might fairly be implied that the persons filling those positions might be engaged in solely police type duties. This is a conclusion, however, unsupported by any other evidence. Perhaps a new category of Deputy Sheriff is being created, but there is no law which supports this creation. In this posture, the rule enunciated in Matter of Flaherty v. Milliken (supra) and followed in Matter of Grifenhagen v. Ordway (supra), that appointees of the Sheriff whose duties relate exclusively to the functions of the Sheriff’s office in criminal matters are subject to the civil service regulations, must be observed. What might appear to be tortured reasoning in the Flaherty case is not needed today to arrive at the same conclusion in the light of a much more sophisticated Civil Service Law than existed at the time of the Flaherty decision (1908). Under the present Civil Service Law the standards for competitive service are clear, and equally clear is section 41 of the Civil Service Law dealing with the exempt class. If Local Law No. 2 of 1969 had created a competitive class for the entire Sheriff’s department without excepting a group for the vague reason that they are ‘ ‘ civil deputies ’ ’, the resolution of the question of validity might be different. Why the duties of this group might be such as to withstand classification is not for the court to view with wonderment. Suffice it to say that the law as enacted is too vague.'and indefinite to fairly determine its application.
A further defect in Local Law No. 2 lies in its possible attempt to run in a parallel line with section 58 of the Civil Service Law and section 209-q of the General Municipal Law, which laws set certain standards for police officers. As has been stated above, 1c civil deputy ’ ’ has been excluded from the law placing certain employees of the Erie County Sheriff in the classified service under the Civil Service Law. The reasonable implication of this is that one who is responsible for the detection and prevention of crime and the enforcement of the general criminal laws of the State (criminal deputy) is within the scope of Local Law No. 2. The defendants’ affidavits indicate that there is and has been in existence for some time a training academy in the Erie County Sheriff’s department where certain deputies undergo training in law enforcement techniques and that certain deputies have been placed within the departmental structure in positions where their duties are restricted to ‘1 criminal duties” only. *837 While the achievement of excellence is laudable it cannot correct legislation which has failed to define separate duties for different Deputy Sheriffs. There has been no showing that any Deputy Sheriff was appointed in the first instance to perform solely noncivil duties. If in fact certain persons were employed by the Sheriff whose sole function was to perform criminal duties or police work, they were improperly employed if they have not met the qualifications set forth in section 58 of the Civil Service Law and section 209-q of the General Municipal Law. If the County Legislature intended certain employees to be hired by the Sheriff to perform solely law enforcement work (there would appear to be no statutory authority for the Sheriff to do this), then Local Law No. 2 is not necessary, for such employees are required to meet the statutory requirements of the Civil Service and General Municipal Law and would automatically fall within the competitive class of civil service since the practicability test of the Constitution and Civil Service Law would pose no problem. (Matter of Andresen v. Rice, 277 N. Y. 271, 279.) In Matter of Ottinger v. State Civ. Serv. Comm. (240 N. Y. 435, 441) the court, addressing itself to the constitutional practicability test and the exempt classification of civil service said: ‘ ‘ The Legislature retains the power of selection among means appropriate to the end, but choice must rest upon reason, and not upon caprice. ’ ’
The question arises, whether Local Law No. 2 changes a power of the Sheriff or abolishes, curtails or transfers to another county officer or agency any power of the Sheriff. As indicated above, the County Charter and the Erie County Administrative Code give the Sheriff the authority to appoint deputies and employees to carry out the duties of his office. Webster’s Seventh New Collegiate Dictionary (G. & C. Merriam Company, Pub.) defines “ power ” u 1 (a): possession of control, authority, or influence over others: 2 (b), legal or official authority, capacity, or right.” It can reasonably be said that so long as men can remember, appointments to the Sheriff’s department in Erie County were solely the prerogative of the Sheriff and the appointees served at the pleasure of the Sheriff. The criterion for appointment was inexact and relied heavily upon the intangible. Even persons who completed training in the Sheriff’s training academy had no guarantee of keeping their appointments other than remaining in the Sheriff’s pleasure. If for any equally intangible reason the Sheriff felt displease'd with an employee’s performance he could be replaced for no other reason than the Sheriff was displeased. Local Law No. 2 changes this. No longer may the Sheriff set his own standards for appointment. *838 Standards will be fixed in accordance with the Civil Service Law. No longer may a Sheriff remove an appointee only because he is displeased. Removal must be in accord with the Civil Service Law. Nothing could be more clear than that Local Law No. 2 does in fact abolish, curtail and change the power of the Sheriff, an elected county officer.
Section 2002 of the Erie County Charter addresses itself to such a change: ‘ ‘ any local law which would * * * change the powers of an elective county officer shall be subject to mandatory referendum”.
In 1959 the voters of Erie County elected to adopt an alternative form of county government, to wit, a County Charter. This charter went into effect January 1, 1960. Section 1 (subd. [h], par. [2]) of article IX of the New York Constitution states: ‘ ‘ After the adoption of an alternative form of county government by a county, any amendment thereof * * * by local law which * * * abolishes, curtails or transfers to another county officer or agency any power of an elective county officer * * * shall be subject to a permissive referendum as provided by the legislature. ’ ’
Subdivision 4 of section 34 of the Municipal Home Rule Law (County Charter Law) similarly provides that no charter law or local law which abolishes, curtails or transfers to another county officer or agency any power of an elective county officer shall become effective in such county until at least 60 days after its final enactment. The law further provides that if the Legislature provides that such local law be submitted to the electors for approval, or if within 60 days after its enactment qualified electors in the county shall file a petition in accordance with law protesting against such law, in number equal to at least five percentum qualified number of votes cast in the county for governor at the last gubernatorial election, then such local law shall become effective only if approved by the electors at the ensuing 'general election as. provided by law. Local Law No. 2 of 1969 was effective immediately upon being signed into law on November 25,1969. As such it is in violation of section 2002 of the Erie County Charter which required that it be approved by a referendum, mandatorily.
Local Law No. 2.of 1969 is also in violation of section 1 (subd. [h], par. [2])'of article IX of the New York Constitution and section 34 of the Municipal Home Rule Law, by reason of its immediate effect, in that no opportunity (60 days) was given to the electors of Erie County to petition in protest of the law. It may well be that the changes sought to be effected by Local Law No. 2 are solicitous but the change nonetheless must be brought *839 about in accordance with law. (Matter of Doherty v. Sanvidge, 58 Misc 2d 347.)
Lastly, that provision of Local Law No. 2 which attempts to cover in all employees of the Sheriff, except the Undersheriff, the secretary to the Sheriff and his civil deputies, who have served for one year in their respective positions, is invalid. Again the court points out that in particularizing “ civil deputies ” as being without the law, the logical inference is that “ criminal deputies ” are within the law. This, however, is a new, heretofore nonexistent position in the Sheriff’s employment. It is a position to which no reference may be found in examining legislation concerning the Sheriff and his employees. The defendants urge that it is the policy of the State to place positions under competitive civil service wherever reasonable men find it practicable to do so, citing section 122 of the Civil Service Law as authority for this policy. In this the defendants are correct, but it is also to be noted that section 122 of the Civil Service Law applies solely to State employees and not to employees of civil subdivisions thereof. (Matter of Benedetto v. County of Suffolk, 61 Misc 2d 312.) Section 122 of the Civil Service Law also provides approval of ‘ ‘ the continued employment of the permanent incumbent of such position ’ ’ upon the certification that the incumbent has satisfactorily performed the duties of the position for one year, the certification to be made by the director of the classification and compensation division. No similar analogy can be extended to present Deputy Sheriffs and certainly not to any ‘ ‘ criminal deputies ’ ’, since it has not been demonstrated or claimed that any such persons were employed for such a specific purpose in the first instance. To further stand in the way of any analogy is the fact that all persons appointed by the Sheriff shall serve at the pleasure of the Sheriff (Erie County Administrative Code, § 15.03, subd. [e]). (See, also, Matter of Fornara v. Schroeder, 261 N. Y. 363; Matter of Sandford v. Finegan, 276 N. Y. 70.)
The only 1 ‘ covering in ’ ’ statute which the court could find which related to employees of civil subdivisions of the State is section 45 of the Civil Service Law entitled ‘ ‘ Status of employees upon acquisition of private institution or enterprise by government ’ ’, clearly not applicable to the instant case.
There would in any event be no reason why “ criminal deputies ” or law enforcement personnel would have to be covered into their position without competitive examinations. This very question was faced in Matter of Andresen v. Rice (277 N. Y. 271, 282), where the court, concluding that competitive examinations for the position of trooper with the State Police were practicable, *840 said: “ This decision does not affect or disturb the officers in the positions they are now holding, as time must be given to the Superintendent to carry out the purposes of the Civil Service Law, as we have expressed it, without disrupting and disorganizing his staff. At such time and under such rules and regulations as he may adopt * * * he can and will provide for examinations, giving due regard to experience and service in his ratings.”
For the reasons stated above, Local Law No. 2 of 1969 is invalid and unconstitutional and in violation of law. Defendants’ motion for summary judgment is denied. Plaintiff’s motion for summary judgment is granted. The restraining order heretofore invoked upon the plaintiff is set aside.