In the Matter of HAROLD H. SIRLES, Appellant, v ROBERT P. CORDARY, as Sheriff of Madison County, et al., Respondents.

Third Department, November 13, 1975

*Earl P. Boyle* for appellant.

*William L. Burke* for respondents.

LARKIN, J. Petitioner was appointed a Deputy Sheriff on January 1, 1971 by the then Sheriff of Madison County. In his capacity as Deputy Sheriff petitioner performed the duties of Assistant Jailer. A two-year collective bargaining agreement between Madison County and the local unit of the Civil Service Employees' Association representing county employees became effective January 1, 1973. This agreement, signed by both the County of Madison and the Sheriff, listed "Occupational Titles", including Grade 8 Assistant Jailer, and provided that section 75 of the Civil Service Law was applicable to the removal of any county employee covered by the agreement.

At the November, 1973 general election the respondent Robert Cordary was elected Sheriff of Madison County. Upon his taking office on January 1, 1974 respondent reappointed all of the Deputy Sheriffs who had been serving his predecessor except petitioner. The issues are (1) whether this proceeding is timely and (2) whether the said collective bargaining agreement properly made section 75 of the Civil Service Law applicable to petitioner. Special Term answered both questions in the negative and dismissed the petition.

CPLR 217 limits the time within which a proceeding may be commenced against a body or officer to four months after the determination to be reviewed becomes final and binding upon the petitioner or after the respondent's refusal, upon demand, to perform its duty. There is some authority to the effect that in the case of a wrongful removal of a public employee that

the removal or dismissal is deemed to constitute a demand and refusal and the Statute of Limitations begins to run at once *(Matter of Phillips v County of Broome,* 44 AD2d 882). The weight of authority, however, supports the proposition that an employee, such as petitioner herein, who is discharged from his governmental position without a hearing is not required to seek reinstatement within four months from discharge, but may delay until such time as he has demanded reinstatement and has been refused, provided he has not so unduly delayed seeking reinstatement as to be guilty of laches *(Matter of Burke v Village of Johnson City,* 36 AD2d 202, affd 29 NY2d 846; see, also, *Austin v Board of Higher Educ. of City of N. Y.,* 5 NY2d 430). In the instant case, petitioner demanded reinstatement and back pay on April 17, 1974, within four months after his removal, and this proceeding was commenced on August 7, 1974, within four months after he was advised by the Madison County Attorney, by letter dated April 24, 1974, that his requests were being refused. Under these circumstances, we conclude that this application is timely *(Matter of Burke v Village of Johnson City, supra).*

The remaining question is whether the collective bargaining agreement effective January 1, 1973 properly made section 75 of the Civil Service Law applicable to petitioner. It has long been established that while all appointees of a Sheriff whose duties are solely within the realm of criminal matters are subject to civil service provisions of the Constitution and related statutes, those employees whose duties include civil matters are employed by the Sheriff personally and are not subject to civil service regulations *(Matter of Grifenhagen v Ordway,* 218 NY 451; *Matter of Flaherty v Milliken,* 193 NY 564). In the instant case Special Term took judicial notice of the fact that there was no separation of duties of the Madison County deputies between criminal and civil functions and found that such appointees were not subject to civil service regulations. Although we disagree with the Special Term decision to the extent that it implies that no civil service provisions are applicable to Sheriff's employees whose duties include civil functions, we conclude that this agreement improperly subjected respondent to section 75 of the Civil Service Law as to employees performing civil duties.

The basis of the personal liability of the Sheriff for the acts of his deputies is article XIII (§ 13, subd [a]) of the New York State Constitution, which provides in part that "the county

shall never be made responsible for the acts of the sheriff". This provision, which has existed since the Constitution of 1822, was the underpinning of *Flaherty (supra)* which first established the dichotomy between criminal and civil deputies for purposes of applying civil service regulations. On the basis of the conclusion that the Sheriff was exposed to narrower personal liability in discharging the criminal duties of his office than in carrying out his civil duties, the court allowed a curtailment, by way of the Civil Service Law, of the Sheriff's absolute power with regard to hiring and firing criminal deputies, but would not permit such restriction in the case of civil deputies or those deputies whose criminal and civil duties were not separated.

Counties today, as at the time of *Flaherty (supra)*, are constitutionally free from liability for the acts of the Sheriff (NY Const, art XIII, § 13, subd [a]). This immunity of the county extends to acts committed in the performance of official duties *(Snow v Harder,* 43 AD2d 1003). The Sheriff, however, remains personally liable for the acts and omissions of his deputies and other subordinates in the course of the execution of their duties (54 NY Jur, Sheriffs, Constables & Police, § 101), although there is authority to the effect that he is not liable for such acts and omissions performed while his deputies are discharging criminal duties *(Foyster v Tutuska,* 25 AD2d 940).

As recently as 1972, the Court of Appeals considered a local law which placed all deputies and employees of the Sheriff *except* his undersheriff, his secretary and his *civil deputies* into the competitive classified civil service *(Amico v Erie County Legislature,* 36 AD2d 415, affd 30 NY2d 729). In upholding the law and, therefore, the distinction, for the purpose of applying civil service provisions, between civil and criminal deputies, the court pointed to the dual role of the Sheriff "as an officer of the court and conservator of the peace within the county" (County Law, § 650) and set forth as a reason for the distinction the problem of "determining the liability of the sheriff for the acts of his deputies" *(Amico v Erie County Legislature, supra,* p 424).

In *McMahon v Michaelian* (38 AD2d 60, affd 30 NY2d 507), the Court of Appeals adopted the opinion of the Appellate Division which upheld a local law that placed *all deputies,* officers and employees of the Westchester County Sheriff, except the undersheriff, into the classified civil service. The

decision, however, specifically distinguished *Grifenhagen (supra)* and *Flaherty (supra)* on the basis of the existence of a section of the Westchester County Administrative Code (L 1948, ch 852), a State legislative enactment, which provided that the county would assume liability for any act or omission of any employee of the county in the Sheriff's office done or made in the performance of official duties. We find no such assumption of liability by Madison County in this case and, therefore, no reason to overturn the law which has been controlling since *Flaherty (supra)*, so as to uphold a contractual provision which subjects a Sheriff to the restraints imposed by section 75 of the Civil Service Law upon removing a deputy, such as petitioner herein, whose duties include civil matters and for whose acts and omissions the Sheriff remains primarily liable.

We recognize that it is the policy of the State to encourage public employers and employees to utilize the collective bargaining process and to reach agreements binding upon both parties (Civil Service Law, art 14; *Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept., Ulster County CSEA Chapter,* 37 AD2d 437). Such contractual agreements are looked upon with favor by the courts unless sufficient constitutional or statutory objection is shown. However, to allow the Sheriff's civil deputies who are his personal appointees to negotiate, as a term of employment, that they may be removed only after a hearing pursuant to section 75 of the Civil Service Law, would be to require a newly elected Sheriff to retain in office civil deputies not of his own choosing, but for whose acts and omissions he has personal liability. Although such a provision may be binding upon the Sheriff who negotiated the agreement, the unique personal responsibility of the Sheriff is sufficient constitutional objection to preclude its enforcement for a period of time longer than the term of the incumbent.

Our decision in *Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept., Ulster County CSEA Chapter (supra)* is not to the contrary. Although the respondent may be a public employer required to negotiate with and enter into a written agreement with a recognized employee organization representing his staff as to terms and conditions of employment (Civil Service Law, art 14), he is not, absent a contrary legislative expression, properly subjected to a contractual provision whereby his power to terminate the employment of

the employees and deputies performing civil functions is limited *(McMahon v Michaelian, supra, contra Matter of Reese v Lombard,* 47 AD2d 327).

The judgment should be affirmed, without costs.

SWEENEY, J. P. (dissenting). We are compelled to dissent, primarily because, in our view, the result which has been reached by the majority does violence to portions of the Taylor Law (Civil Service Law, § 200 *et seq.)* and the ends which its enactment contemplated. Under its stated policy, the Taylor Law grants to public employees the right of organization and representation requiring governments to negotiate with and enter into written agreements with employee organizations representing public employees. (Civil Service Law, § 200.) Under section 202, public employees shall have the right to form, join and participate in any employee organization of their choice. They shall have the right to be represented by such employee organization to negotiate collectively with their employers in the determination of their terms and conditions of employment. (Civil Service Law, § 203.) Although appointees of a Sheriff whose duties include civil matters are ordinarily considered to be employed by him personally, this court has determined that for purposes of the Taylor Law, deputy sheriffs are public employees. *(Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept., Ulster County CSEA Chapter,* 37 AD2d 437, 439.)

None of the cases upon which the majority relies deals with the effect of the constitutional provision that "the county shall never be made responsible for the acts of the sheriff" (NY Const, art XIII, § 13) on a public employment contract entered into pursuant to the Taylor Law. In the *County of Ulster* case we found that the *Flaherty* (193 NY 564) and *Grifenhagen* (218 NY 451) decisions were not (p 440) "persuasive in this situation when the court is called upon to implement a remedial statutory plan for labor negotiations between government and its employees." The impressive policy considerations of the Taylor Law favoring negotiations and ultimate collective bargaining contracts between government and its employees lead but to one conclusion, the Legislature has intentionally qualified the broad power of the Sheriff to hire and fire his employees. Respondent's statutory authority to remove at pleasure has been limited by the collective bargaining agreement which was entered into by his predecessor. This is true in respect to all of the Sheriff's deputies, whether in the

discharge of duties relating solely to criminal matters, or to civil process or to a combination of both. (County Law, § 652, subd 2.) It also applies to all Madison County employees and is, therefore, not discriminatory. The relation between the Sheriff and his appointees, however, has not otherwise been changed by the collective bargaining contract entered into by respondent's predecessor and, in our opinion, it does not conflict with section 13 of article XIII of the Constitution.

We do not agree with the majority that a legislative enactment is needed to provide that the county assume liability for the acts of the Sheriff's employees in order to uphold the restraints imposed by section 75 of the Civil Service Law which have been made a part of the collective bargaining agreement involved herein. In enacting the Taylor Law, the Legislature has sanctioned such a restraint if agreed upon between the parties. To interpret the constitutional mandate of section 13 of article XIII as a means of preventing the Legislature from achieving the beneficial objectives of the Taylor Law, adopts far too narrow a view of the Constitution, especially when it is remembered that such law could not have been in the minds of those who enacted this constitutional provision in 1822.

A public employer acts in his official capacity when agreeing to the terms of a written agreement with an employee organization. Subdivision 12 of section 201 of the Taylor Law provides that the agreement resulting from the exchange of mutual promises between the chief executive officer of a public employer and an employee organization shall become a binding contract, for the period set forth therein. Since it is not unusual for a public employer to be succeeded by another during the term of such an agreement, such as in the instant case, the Legislature has expressed an intent that such successor employer is to be bound by the provisions of a contract negotiated by his predecessor. *(Matter of Reese v Lombard,* 47 AD2d 327, 331–332.)

The judgment should be reversed, and the petitioner accorded a hearing pursuant to section 75 of the Civil Service Law.

KANE and REYNOLDS, JJ., concur with LARKIN, J.; SWEENEY, J. P., and KOREMAN, J., dissent and vote to reverse in an opinion by SWEENEY, J. P.

Judgment affirmed, without costs.